IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JAMES A. MENTEK, JR.,

    Plaintiff,

v.                               Case No. 2007-C-0239

KENOSHA COUNTY SHERIFF'S
DEPARTMENT, et al.,

    Defendants.

BRIEF OF DEFENDANTS TOM PERLBERG, RICHARD COLE, AND DENNIS
BARRY IN SUPPORT OF MOTION TO DISMISS ACTION AGAINST THEM

NATURE OF ACTION

    This is a civil rights action filed on March 9, 2007, under 42 U.S.C. §§ 1983 and 1985. The plaintiff is James A. Mentek, Jr. The defendants are the Kenosha County Sheriff's Department, four sheriff's officers, the Kenosha County Correctional Health Services, three doctors, a nurse, a visiting nurses association, the Kenosha Police Department, two police officers, two state assistant district attorneys (Tom Perlberg and

Richard Cole), a state probation/parole agent, the supervisor of the state probation/parole agent, a state administrative law judge, and a state circuit court judge (Dennis Barry).[1]

Mentek seeks compensatory and punitive damages against each of the defendants. Defendants Perlberg, Cole, and Barry have moved to dismiss this action on the grounds of Eleventh Amendment immunity, judicial immunity, and prosecutorial immunity.

STATEMENT OF THE CASE

The case arises from Mentek's arrest on December 25, 2005.[2] He alleges that he was arrested and incarcerated because he expressed his religious beliefs, that he was held in solitary confinement and otherwise punished unless he took psychotropic medications, and that he was denied copies of his medical records. He alleges that he was arrested for carrying a concealed weapon, a sword that Mentek characterizes as a religious icon called the "Sword of Gideon."

He alleges that ADA Perlberg issued a criminal complaint against him on December 27, 2005. He alleges that Perlberg refused to produce the sword in court. He alleges that Perlberg refused to dismiss the charges, thereby allowing the charges to serve as a basis for the revocation of Mentek's probation.

---

[1] Three of the six state defendants (the two assistant district attorneys and the circuit court judge) have been served with Mentek's complaint. The remaining three state defendants (the probation and parole agent, her supervisor, and the administrative law judge) have not been served with Mentek's complaint.

[2] The allegations contained in Mentek's complaint are accepted as true for purposes of the motion to dismiss.

- 2 -

Mentek alleges that Brownson took a statement from him, immediately following his arrest, and, on December 30, 2005, accused him of lying because his statement did not conform to the police report. He alleges that he was notified on December 30, 2005, that his probation would be revoked, based primarily on the new criminal charges. He alleges that he signed a waiver on December 30, 2005, waiving a revocation hearing.

Mentek alleges that on January 9, 2006, he received a letter from Brownson indicating that her supervisor instructed her to schedule a revocation hearing so that an administrative law judge could determine whether a competency hearing was required. He alleges that Brownson and Grisham determined that he was incompetent based solely on his religious beliefs. He alleges that contrary to the Probation and Parole Operations Manual of the Wisconsin Department of Corrections (DOC), Brownson sent him a copy of a revocation hearing request form that was not signed or authorized by Grisham.

Mentek alleges that on January 20, 2006, ALJ Beckwith wrote him a letter indicating that notwithstanding his waiver of a revocation hearing, the hearing would remain on the calendar because Brownson had written a letter stating that a revocation hearing was necessary to determine whether a competency hearing was necessary. He alleges that on January 25, 2006, he wrote a letter to ALJ Beckwith citing the Wisconsin Constitution for the proposition that no person shall be rendered incompetent to give evidence based on the person's religious beliefs. He alleges that ALJ Beckwith never responded to his letter. He alleges that he received a letter from Grisham on January 30,

2006, indicating that DOC would accept his waiver of the revocation hearing because the court had decided to allow him to proceed *pro se* on the pending criminal charges.

Mentek alleges that Grisham and Brownson violated DOC procedural regulations by recommending a nine-month sentence to Judge Barry. He alleges that on February 13, 2006, Brownson sent him a revocation summary and a letter attempting to justify her recommendation and indicating that the sentence was completely up to the judge.

Mentek alleges that Brownson forced him to undergo a psychological evaluation based upon his religious statements. He alleges that Brownson informed him, at that point, that no one was telling him he had to take any medication. He alleges that Brownson made damaging statements about him including a statement that he refused to accept help for mental health issues and that it would be difficult to supervise him safely in the community.

Mentek alleges that ADA Cole appeared in court on February 17, 2006, in place of Perlberg, and refused to dismiss the criminal charges. He alleges that ADA Cole had a concealed recording device, in violation of Wis. Stat. § 968.31, when he and ADA Cole had a post-hearing discussion.

Mentek alleges that he was sentenced by Judge Barry on February 28, 2006, to nine months in jail, the maximum sentence prescribed by law when probation is revoked. He alleges that Judge Barry accepted Brownson's revocation summary despite its inconsistencies. He alleges that Judge Barry stated during the sentencing hearing that Mentek had "no right to have a sword at church on Christmas Day," that he was "not

- 4 -

Case 2:07-cv-00239-CNC   Filed 05/14/07   Page 4 of 10   Document 10

buying" Mentek's reliance on scripture, and that "you're free to worship any way you choose, but not on probation, and you cannot become a priest on my probation." He alleges that Judge Barry failed to provide him with a copy of the judgment or a list of the court reporters, as required by Wis. Stat. § 809.30(2)(c). He alleges that Judge Barry ignored his post-conviction motions in order to force him to serve his sentence and to make his appeal moot.

Mentek alleges that on March 1, 2006, the carrying-a-concealed-weapon charges against him were dismissed after ADA Cole conceded in writing that the sword blade had not been sharpened and the point was rough.

Mentek alleges that on April 7, 2006, on a motion for sentence modification, Judge Barry stated that he still felt that Mentek could worship any way he chose, but not on probation, and that he could not become a priest on Judge Barry's probation. He alleges that Judge Barry stated that "if you can show me where the Bible tells you to take the sword to church, I'll grant your motion." He alleges that Judge Barry asked him whether he was "God," that when Mentek responded in the negative, Judge Barry said "then it's not your sword," and that he repeatedly told Mentek that his religious beliefs were "bogus." He alleges that Judge Barry commented that he (Mentek) was a "dangerous man." He alleges that when he informed Judge Barry that he had filed grievances against Judge Barry, Judge Barry stopped him from speaking and stated "how dare you have the audacity to attack this court." On April 7, 2006, Judge Barry entered a written order denying Mentek's motion.

ARGUMENT

## I. THIS ACTION AGAINST DEFENDANTS PERLBERG, COLE AND BARRY IN THEIR OFFICIAL CAPACITY IS BARRED BY THE ELEVENTH AMENDMENT.

The Eleventh Amendment to the United States Constitution denies federal courts the authority to entertain suits brought by private parties against a state without the state's consent. *See Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Eleventh Amendment immunity extends to state officials when they are sued for damages in their official capacity. *See Graham,* 473 U.S. at 169. The assistant district attorneys and the circuit court judge in Wisconsin are state officials or state employees. *See* Wis. Stat. §§ 230.08(2)(sg), 753.07(1), and 978.12. Consequently, this action against the individual state defendants for damages in their official capacity is barred by the Eleventh Amendment.

## II. THIS ACTION FOR MONETARY DAMAGES AGAINST JUDGE BARRY IS BARRED BY JUDICIAL IMMUNITY.

Judges are absolutely immune for their judicial acts from civil suits for damages. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Judicial immunity is premised upon the "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *See id.* at 355, *quoting Bradley v. Fisher*, 80 U.S. 335, 13 Wall 335, 347, 20 L. Ed 646 (1871). "A judge will not be deprived of immunity because the action he took

was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *See id.* at 356-57, *quoting Bradley*, 13 Wall at 351. The scope of the judge's jurisdiction must be construed broadly where the issue concerns the judge's immunity from liability. *See id.* The doctrine of judicial immunity even extends to federal civil rights actions. *See id.*

Judges are absolutely immune for their judicial acts from civil suits for damages. *See Stump*, 435 U.S. at 355-56. Judicial immunity is premised upon the "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *See id.* at 355, *quoting Bradley*. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *See id.* at 356-57, *quoting Bradley*, 13 Wall at 351. The scope of the judge's jurisdiction must be construed broadly where the issue concerns the judge's immunity from liability. *See id.* The doctrine of judicial immunity even extends to federal civil rights actions. *See id.*

In this case, Mentek complains that Judge Barry accepted Brownson's revocation summary despite its inconsistencies, sentenced him to a maximum sentence of nine months when his probation was revoked, failed to provide him with a copy of the judgment or a list of the court reporters, ignored his post-conviction motions, denied his motion for sentence modification, and made comments on the record about Mentek's

- 7 -

conduct on December 25, 2005, and about Mentek's justification for his conduct, including his religious beliefs. Such actions clearly were judicial actions. Consequently, Judge Barry is entitled to judicial immunity from liability for the performance of such judicial acts.

### III. THIS ACTION AGAINST THE ASSISTANT DISTRICT ATTORNEYS FOR MONETARY DAMAGES IS BARRED BY PROSECUTORIAL IMMUNITY.

State prosecutors are absolutely immune from civil suits for damages for acts within their prosecutorial duties. *See Imbler v. Pachtman*, 424 U.S. 409, 427, 431 (1976). Prosecutorial immunity is based upon the same considerations that underlie judicial immunity, including "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *See id*. at 422-25.

In this case, Mentek complains that ADA Perlberg issued a criminal complaint against him and refused to produce the sword in court, that ADA Cole had a post-hearing discussion with him, that ADA Cole made written concessions about the characteristics of the sword, and that ADA Perlberg and ADA Cole refused to dismiss the criminal charges against him. Such actions clearly involve the performance of prosecutorial acts. Consequently, ADA Perlberg and ADA Cole are entitled to prosecutorial immunity from liability for the performance of such prosecutorial acts.

IV. THE PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL STATE DEFENDANTS ARE BARRED BY QUALIFIED IMMUNITY.

Government officials performing discretionary functions are entitled to qualified immunity as long as their conduct "does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The law must have been clearly established at the time that the conduct occurred. *See id*. Qualified immunity is immunity from suit, not a mere defense to liability. *See Arneson v. Jezwinski*, 206 Wis. 2d 217, 223, 556 N.W.2d 721 (1996), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The purpose of qualified immunity is to protect government officials from the burdens of litigation, and to permit them to perform their governmental duties and to exercise their discretion without distraction. *See id; Harlow*, 457 U.S. at 816.

In this case, Mentek does not identify any conduct of Judge Barry, ADA Perlberg, or Judge Cole that violates any clearly established statutory or constitutional rights of which a reasonable person would have known at the time. Accordingly, the claims against the individual state defendants are barred by qualified immunity.

CONCLUSION

Judge Barry, ADA Perlberg, and ADA Cole respectfully request that the court grant their motion and enter judgment dismissing this action against them.

s/David C. Rice
DAVID C. RICE   State Bar # 1014323
Assistant Attorney General
Attorneys for Defendants,
Tom Perlberg, Richard Cole, and
Dennis Barry
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Telephone: 608-266-6823
Fax:  608-267-8906
E-Mail: **ricedc@doj.state.wi.us**

- 10 -