# IN THE DISTRICT COURT

## FOR THE EASTERN DISTRICT OF WISCONSIN

U.S COURTHOUSE '07    NOV 26    AT1 :24

JAMES A. MENTEK JR.,

PLAINTIFF,

Vs.                                                          Case No: 07-C-0239

KENOSH COUNTY SHERIFF'S DEPT., ET. AL.

DEFENDANTS.

---

## VERIFIED STATEMENT OF DISPUTED FACTS,
## BRIEF IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT
## AND MOTION TO DISMISS,
## AND MOTION FOR JUDGMENT ON THE PLEADINGS

---

**NOW COMES** the Plaintiff, James A. Mentek Jr., appearing Pro Se upon all files, records, and proceedings herein, reserving all jurisdictional objections, and makes this Statement of Disputed Facts in opposition to the Proposed Findings of Fact and Conclusions of Law tendered by the Defendants, as well as makes this Statement of Disputed Facts and Conclusions of Law in opposition to Defendants Motion to Dismiss filed by Defendants Barry, Perlberg, and Cole.

**IN SUPPORT** of said Statement of Disputed Facts, Plaintiff James A. Mentek Jr. declares under penalty of perjury as follows:

## STANDARD OF REVIEW

Summary Judgment is a procedure designed to dispose of cases without trial. In most pro se prisoner cases, the defendants will move for summary judgment. Summary Judgment is to be granted if the record before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Plaisance v. Phelps, 845 F.2d 107, 108 (5th Cir. 1988).

A "material" fact is one that "might affect the outcome of the suit under governing law....Factual disputes that are irrelevant or unnecessary will not be counted. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3rd Cir. 1992). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).

In determining whether there is a genuine issue of material fact, the Court must review all facts and all reasonable inferences in favor of the nonmoving party. Smith v. Maschner, 899 F.2d 940, 949 (10th Cir. 1990) (circumstantial evidence could create an issue of material fact barring summary judgment); Wilson v. City of Chicago, 707 F.Supp. 379, 381-82 (N.D.Ill. 1989) (summary judgment could not be granted to a police supervisor whose conduct permitted the inference that he condoned or encouraged excessive force).

In plain English, all of this means: if the facts are not in dispute, or if the factual dispute is over something that doesn't matter to the outcome of the case, the Court can decide who wins the case based on the papers submitted, without any further proceedings.

If there is a dispute over facts that make a difference in the case, the Court must deny summary judgment. The case will then proceed to trial to determine the facts. The Court is not supposed to decide disputed facts or assess credibility on a summary judgment motion. Wilson v. Williams, 997 F.2d 348, 350-51 (7th Cir. 1993); Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991); Titran v. Ackman, 893 F.2d 145, 147 (7th Cir. 1990).

Summary judgment may be granted on the whole case or on part of the case. It may be granted on some legal claims and not others; Richardson v. Coughlin, 763 F.Supp. 1228 (S.D.N.Y. 1991)(granting summary judgment to the plaintiff on one issue and to the defendants on one issue, and denying it on a third issue); for or against some parties but not others; Bellamy v. McMickens, 692 F.Supp. 205, 210-12 (S.D.N.Y. 1988)(summary judgment granted to supervisory officials, denied to officials directly involved in incident); or on liability but not on damages. Rule 56(c), Fed.R.Civ.P. If one party moves for summary judgment, the Court may grant summary judgment for the other party if the record before it so justifies. Eckford-El v. Toombs, 760 F.Supp. 1267, 1272 (W.D.Mich. 1991).

The Court cannot consider hearsay statements or other matters that would not be admissible at trial, Beyah v. Coughlin, 789 F.2d 986 (2nd.Cir 1986), or unsworn factual statements. Kaufman v. Johnson, 454 F.2d. 264, 266 (3rd.Cir 1972)(statements by counsel in court and in briefs were not part of the summary

judgment record). Sometimes a party submits a motion to dismiss or a motion for judgment on the pleadings, but includes with it additional materials such as affidavits or documents, which are not supposed to be considered on such motions.

If the Defendants do not dispute your factual allegations, the judge should then decide the case based on those undisputed facts. If the Defendants do dispute the facts, the judge should deny summary judgment holding a trial to determine facts. Accordingly, if the Plaintiff's Complaint was verified, the Court should consider it as an affidavit in opposition to summary judgment. Neal v. Kelly, 963 F.2d 453, 457 (D.C.Cir. 1992) and cases cited; Williams v. Griffin,, 952 F.2d 820, 823 (4ᵗʰ Cir. 1991); Williams v. Adams, 935 F.2d 960, 961 (8ᵗʰ Cir. 1991). This is true of a form complaint with a form verification that the Plaintiff has signed, as well as a Complaint that Plaintiff has written from scratch. Williams v. Bowman, 981 F.2d. 901, 904-05 (6ᵗʰ Cir. 1992); McNeal v. Macht, 763 F.Supp. 1458, 1461 (E.D.Wis. 1991).

## STATEMENT OF FACTS

First and foremost, Plaintiff would strongly object to a portion of the documents submitted by Defendants Preston, Van Tine, Johnson, and Reid, as well as the Kenosha County Sheriff's Department, as they contain medical information from medical records that have not been duly released to these parties by way of an Informed Consent Release duly signed and allowed by Plaintiff and are not part of the Complaint of Plaintiff or part of the Exhibits attached to the verified Complaint. As all these Defendants cannot be "custodian of records", and particularly medical records, notes, reports, memoranda, etc., a real problem exists, as this is a violation of Federal Law under HEPPA, Sec. 51.60 of the Wisconsin Statutes, as well as violation of both secs. 146.82 and 146.83 Stats. Please be mindful that this Court has supplementary jurisdiction over all State Tort claims and has the authority to make a ruling as such against the moving Defendants. (See Exhibits 1A – 1I attached hereto). Accordingly, Plaintiff is entitled to an Emergency Restraining Order under State law, as well as damages up to $250,000, pursuant to both secs. 146.84(1)(c) and sec. 813.02(1), prohibiting these Defendants from any further violation of secs. 146.82 and 146.83 Stats., as it relates to the Plaintiff, and further restraining them from destroying any and all medical "evidence" now in their possession, pursuant to sec. 146.83(4) Stats., as such destruction or concealment is a crime under sec. 146.84(2)(a)(3) Stats.

Furthermore, as neither Attorney Wilson nor A.A.G. Rice represents the interests of Defendants Kenosha Visiting Nurses, nor Dr.'s Caldwell, O'Keefe, or Shotick, if these Defendants desired medical information, they should have requested a Release of Medical Information from Plaintiff as a part of their Discovery Request. Instead, they took it upon themselves to seek, review, retain, release and divulge medical information written by Defendants Caldwell, O'Keefe, and Shotick, which they do not represent.

Accordingly, Defendant KCCHS did not provide any affidavit from any of its agents or assignees, thus, no medical information could have been released, period. Furthermore, Defendant Kenosha County Sheriff's Department employs Defendants' Kenosha Visiting Nurses, Defendant Caldwell, Defendant O'Keefe, and Defendant Shotick by way of contract with Kenosha County as "...none of the nursing, medical or mental health staff identified in the complaint or who work in the Kenosha County Jail are employed by Kenosha County or Defendant Kenosha County Sheriff's Department..." Id. (See Defendants' Brief, Para. 7, 8, 9, 10, 11,and particularly 12, 17, as well as Para. 18, 19, 21, 22, 23, 25, and 26. (See Para. 64 of Defendants' Brief, which statements came from these enclosed medical records and the Affidavit of Defendant Reid, at Para. 21, Defendants Ex. C at 1)(Para. 74 of Defendant's Brief, which statements came from the enclosed medical records of Defendant Caldwell, and also the Affidavit of Defendant Preston, Para. 31, Ex. F at 3), (Para. 105 of Defendant's Brief, which statements came from the enclosed medical records of Defendant O'Keefe, and also the Affidavit of Defendant Preston, Para. 48, Ex. F at 3)(Para. 106-114 of Defendants' Brief, which statements came from the enclosed medical records of Defendant O'Keefe, and the Affidavit of Defendant Preston, Para. 49-56, Ex. F at 3)(Para. 122 of Defendants' Brief, which statements came from the enclosed medical records of Defendant Shotick, Affidavit of Defendant Preston, Para 58, Ex. G at 3). (Also see Exhibits 1A – 1I attached hereto). Despite the fact that Attorney Wilson cited these allegations as coming from Plaintiff's Complaint, none of the attached medical records are named or attached to Plaintiff's Complaint. Clearly, the attached medical records and reports support Plaintiff's claims against these moving Defendants, who have egregiously violated both State and Federal law in an attempt to have the claims of Plaintiff dismissed under Summary Judgment.

Of further significance is the fact that the majority of the Exhibits attached to these Defendant's Affidavits do not even relate to the incarceration on 12/25/05, instead pre-dating the subject incarceration and period of constitutional violations. These Exhibits clearly show how Plaintiff was abused, injured, man-handled, and violated, being viciously strapped to a restraint chair, a bag placed over Plaintiff's head, then injured physically by Sgt. Salas and other Jailers, who physically abused Plaintiff for days at a time. Of even further significance is the fact that these Defendants never addressed the illegality of the medical forms used by Defendant KCCHS, but instead dodged this allegation by stating that Plaintiff never requested medical treatment, but instead informed these Defendants that he needed copies of his medical records for lawsuit purposes, only to have his forms returned without adequate response, when the requests by Plaintiff were of medical nature, and due to the fact that Plaintiff has the right under Sec. 51.60 Stats., to examine his medical records. Instead, responses included "...there is much legal jargon contained in your request. Write a simple request and we will respond accordingly...", "...what do you want, what are you asking for...". Accordingly, when Plaintiff cited scripture and provided both verse and chapters from the Bible, response included "...medical form sent to security and the jail psychologist for review..." "...among other delusions, you claim to be Jesus Christ...", and "...threats will not be tolerated..." when Plaintiff informed Defendant KCCHS that he needed copies of medical records for lawsuit purposes. (See Exhibits attached to the verified Complaint).

Next, we have Defendants' Exhibit 2A, attached hereto, which is the actual Transporting Officer Observation Summary, which clearly states "...NO..." as to the exhibition by Plaintiff as to any harm to himself or others, as well as "...NO..." to any alleged suicidal gestures that could have been made by Plaintiff during transport. Despite Defendants' reliance on this "bizarre behavior", at no time did Plaintiff ever make any gestures, or used any language to support any "suicide watch" or placement into a "protective holding" situation.

Plaintiff's Exhibits 2B - 2E, attached hereto, are the actual report of Defendant Griffey, who subsequently never returned the WAIVER when served by way of mail, which was required under Federal Law. These Exhibits clearly show that all of Plaintiff's activities and language had a religious overtone, or "...grandiose fixation with religion..." as stated in the report, as well as the enclosed medical records attached hereto. (See Ex. 2B-2E, attached hereto).

Then we have Exhibits 3A – 4B, attached hereto, which are the "Zone One Protective Holding Report", which clearly states "...Inmate to be segregated in W-2 **until he realizes he is not Jesus Christ...**" Id. (See Plaintiff's Exhibit 3A attached hereto). Next we have the actual "Medical Questionnaire" that was allegedly completed on 12/25/07, attached hereto, which contains absolutely no derogatory remarks or comments of any kind. (See Plaintiff's Exhibits 4A-4B). Then we have Exhibits 4C-4D, attached hereto, which is a Medical/Mental Screening form completed in the jail on a prior incarceration, when Plaintiff was cited with a municipal citation and a P.O. Hold placed on Plaintiff. Accordingly, these Exhibits have absolutely nothing to do with the claims made by Plaintiff in the verified Complaint.

Defendants' Exhibit 4E, attached hereto, is the Kenosha County Inmate Isolation Record, which clearly indicates "...Dr. Caldwell documented that inmate Mentek is manic, delusional, and not willing to consume his medications. Inmate to remain isolated from general population for the safety of staff, the inmate, and the safe, secure, and tranquil operation of the PTF..." The reason for this confinement was noted under the Inmate Statement which reads"...**Inmate Mentek stated he is Jesus Christ**..." There are no notes or mention of any alleged "bizarre behavior", which is the wording used by Defendants to confine Plaintiff in solitary confinement. Be advised that when Plaintiff sought a written explanation of this "bizarre behavior", Defendants Johnson, Vantine, and Preston all ignored Plaintiff's Grievance and subsequent Appeal in this regard, instead continuing to use the words "...bizarre behavior...", but never explaining what these words entailed. (See Exhibits attached to Plaintiff's verified Complaint).

Plaintiff's Exhibit 5A, attached hereto, clearly shows that the alleged sword, the subject of the incarceration and reason for the revocation of probation and nine (9) month period of incarceration, clearly indicates "...You are correct that the sides had not been sharpened and the point was rough..." This admission showed that this alleged "dangerous concealed weapon" could not meet the definition of a "dangerous and deadly weapon"under State Statutes, contrary to the Arrest Report of Defendants Griffey and May, which reports clearly indicate "...sharpened point..." (See Ex. 2B-2E, attached hereto) This is precisely why these charges were duly dismissed, but not until (8) hours **AFTER** Plaintiff had been sentenced by Defendant Barry to a maximum sentence of nine (9) months in the Racine County Jail,

without either Huber privileges or release for religious worship and practice. (See Plaintiff's Ex. 5A attached hereto). These charges were the basis for revocation solely relied upon by Defendant Barry.

Next we have the issue of a "…hidden recording device…" used by Defendant Cole to record the conversations with Plaintiff, despite the fact that Plaintiff was solely representing himself in the criminal actions and specifically had no knowledge of this recording device nor gave authorization to Defendant Cole to record negotiations behind closed doors. Defendant Cole's admission clearly states, in writing "…For your information there was a recording device being used when you and I had our last discussions, while you were in custody. I have a copy of the recording and provide you with an opportunity to listen to it should you care to…As you are representing yourself I am under additional obligations to make sure the process works fairly…" (Plaintiff's Exhibit 5A, attached hereto). Clearly the conduct of Defendant Cole violated the Code of Ethics and further is a criminal act under the Wisconsin Statutes. It should be evident that all of these Defendants would clearly go to any lengths, even committing criminal acts, that subsequently remain uncharged and unprosecuted, only to ensure that Plaintiff was to remain incarcerated due to the expression of his religious beliefs and practices.

Next, we have some of Defendants' Exhibits , attached hereto, labeled by Plaintiff as Exhibits 5B-5I, which are Medical Questionnaire forms from previous incarcerations that have absolutely nothing to do with the claims made by Plaintiff in the verified Complaint, other than to show that Plaintiff stood on his religious convictions and beliefs at all times material hereto, both in the past, the present, and will continue to stand on his Constitutionally protected religious freedoms in the future. (See Ex. 5A – 5H attached hereto).

To continue with this tirade, Plaintiff would introduce the last of Defendants' Exhibits, attached hereto, and referred to as Plaintiff's Exhibits 6A – 6C. (See Ex. 6A-6C, attached hereto). Exhibit 6A is an alleged "Receipt" for some kind of Jail "handbook", however, as it contains no "date", it is obviously worthless, particularly as Plaintiff was not "booked" until the early morning of December 26, 2005, then taken to solitary confinement. When Plaintiff was in "holding" awaiting "booking", Plaintiff did nothing more than sleep, and was at least provided with a mattress to lay on, after all his clothing was taken away, and remained naked, sleeping on the concrete floor until such time that Plaintiff was officially "booked",

which consisted of answering the Medical/Mental Health form, signing the incoming Property Form, changing clothing into a Jail uniform, and being finger printed.

If the Court would review Plaintiff's Exhibit 5F, they could clearly see that these Defendants, and particularly other Supervisory Officials who work for Defendant Kenosha County Sheriff's Department, repeatedly kept Plaintiff in "holding", waiting to be "booked." In fact, Exhibit 5F clearly indicates "…can be booked when he decides to cooperate and calm down…" This also supports Plaintiff's assertions that he was not "booked" on 12/25/05, but instead on the early morning of 12/26/05. Of even greater significance is the fact that Plaintiff never signed this form on 12/25/05, or at any other relevant time during the 12/25/05 incarceration. Clearly, this form is a "forgery" used by Defendants in an attempt to mitigate liability in this case. Be advised that "inmate Handbooks" have not been handed out for years. That is precisely the reason that so many grievances are filed against the Security Officers, as due process of law requires adequate "**NOTICE**" of the rules before inmates can be either charged or convicted of a rule infraction.

Next, we have another of Defendants' Exhibits, attached hereto and labeled as Plaintiff's Exhibit 6B, allegedly from this fictitious "Inmate Handbook", which attempts to explain the "Request for Medical Attention Form." Unfortunately, this document fails to inform inmates that they are required to "**WAIVE ALL LIABILITY**" from both Defendants KCCHS and the Kenosha County Sheriff's Department, as well as sub-contracted physicians, nurses, or other medical staff. (See Request for Medical Attention Forms attached to Plaintiff's verified Complaint). Clearly, this is illegal under Federal Law. Instead of addressing Plaintiff's claims as to the illegality of the form itself, these Defendants have completely "ignored" this claim made by Plaintiff in the verified Complaint, instead attempting to argue that Plaintiff failed to request medical attention during this period of incarceration. Therefore, it should be construed by this Court that the Request for Medical Information used by these Defendants is "illegal" and violates HEPPA, and that these Defendants thereby duly "**ADMIT**" this as a violation of Federal Law, as failure to respond to an assertion in the Complaint can be construed as an "**ADMISSION**" under the Rules.

This form further attempts to explain the "Grievance" procedure that is lawfully protected under the First Amendment to the U.S. Constitution, as all have the right to "…access the Courts and pursue redress of grievances…", which Plaintiff took full advantage of, exhausting all available administrative

remedies required under State law. Instead of recognizing this protected right and freedom, Plaintiff was told, in writing "...legal threats will not be tolerated..." (see Request for Medical Attention Forms, attached to Plaintiff's verified Complaint), "...no meds/ has been writing threatening notes to HSU, advised Dept. to contact Lt. Van Tine..." (Defendants' Exhibit, labeled as Plaintiff's Exhibit 1E attached hereto), and "...He has also been quite hostile, stating that he is suing Kenosha Co. and this author for religious persecution..." (Defendants' Exhibit labeled as Plaintiff's Exhibit 1H, attached hereto). As these Defendants refused to address the issue of "bizarre behavior" on the filed grievance forms, they instead ignored Plaintiff's assertions altogether, and instead continued to use the term "bizarre behavior" to justify solitary confinement and punishment "...until such time that Mentek realized he is not Jesus Christ", despite the holding of the Bible in Galatians, Chapter 2:19-20, which quotes "...Because of the law, I died as far as the law is concerned. I died so that I might live for God. I have been crucified with Christ. I don't live any longer. Christ lives in me. My faith in the Son of God helps me to live my life in my body. He loved me. He gave himself for me..."

Further reference against Defendants assertions that Plaintiff claimed to be the "...Son of God...", which further support Plaintiff's assertions in the Complaint, can be found in the Bible at Galatians, Chapter 3:26-27, which quotes "...You are all children of God by believing in Christ Jesus..." Clearly, religious persecutions as well as other Constitutional violations by way of an ongoing "**CONSPIRACY**" under 42 U.S.C. § 1985 remain to be evident in this case, as Plaintiff has "laid a foundation" founded in both scripture and written documentation that all named Defendants cannot overcome.

Finally, we have the last of Defendants' Exhibits, attached hereto, labeled by Plaintiff as Exhibit 6C, which is allegedly in the fictitious "Inmate Handbook", which supposedly explains the "Classification" process. (Defendants' Exhibit, attached hereto, labeled by Plaintiff as Exhibit 6C). Unfortunately, when inmates arrive at the jail, after the "booking" process, while awaiting "classification", they are housed in "J-Block, K-Block and L-Dorm", not placed into "X-Block", which is punitive segregated confinement for those inmates found guilty of alleged "handbook" violations after a due process hearing, or "W-Block" which is used to house "voluntary" segregated confinement inmates, also known as "protective custody", or "V-Block" which is used exclusively for inmates after a suicide attempt. While these Defendants adamantly state that Plaintiff's housing in "X-Block", W-Block", and "V-Block" was not punitive, they

forget that Plaintiff was forced to eat segregation meals, which are significantly used to "punish" segregation inmates by serving them cold meals significantly different that what is eaten by the general population. The segregation cell blocks, themselves, are freezing cold, and the lights remain on 24 hours a day. Showers are forced upon segregated inmates at 3:00 a.m. every other day, only allowing for (3) showers per week, which is egregious punishment, and only given (1) set of clothing, underwear, socks, etc., for an entire week, while General Population Inmates have (3) sets. There are no TV's, and access to the phone is extremely limited. Likewise, inmates in "X-Block", to wit: "punitive segregation" are not allowed any kind of books, writing materials, etc., thus, Plaintiff's request for a Bible simply went "unanswered" by these Defendants who, so conveniently, simply ignored Plaintiff's requests in this regard. Furthermore, Plaintiff did, in fact, "appeal" the decision by these Defendants regarding segregate of Plaintiff, obtaining a jail "pen" from another inmate locked in "punitive segregation" who got the pen from a "Trustee", by and through the "Grievances" filed by Plaintiff in an effort to "exhaust available administrative remedies", and made a part of the record, said "grievances" duly attached to Plaintiff's verified Complaint. (See "grievances" attached to Plaintiff's verified Complaint, believed to be Plaintiff's Exhibits 1-5 attached thereto).

Be advised that these statements can be backed up by the multitude of lawsuits that have, in fact, been filed against Defendant Kenosha County Sheriff's Department, stemming from the food inmates are forced to eat while in punitive segregation, as well as the conditions of confinement themselves. As such, Judicial Notice may be required of these multitude of "lawsuits" and "grievances" that have been filed over the last several years against these same Defendants, and documentation of said actions can be obtained through Plaintiff's Discovery Request in these regards. Therefore, the allegations by these Defendants that "segregation" is, was, and has always been part of the "classification process", is an absolute "LIE", and documentation requested by Plaintiff in the enclosed Request for Discovery to the Defendant will clearly show that these allegations are so far from the truth as to border on "perjury", which is a criminal act by these Defendants.

As Plaintiff need not address each and every paragraph of Defendants' Affidavits, nor the Proposed Findings of Fact and Conclusions of Law, due primarily to these Statement of Facts and Argument contained in this Brief, supported by the Defendants' own Exhibits, one thing remains clear…a

"**CONSPIRACY**", in fact, exists in this case, which should warrant federal prosecution and indictments against all named Defendants. Clearly, it was the hope of these Defendants that Plaintiff would simply "not respond", allowing for Summary Judgment to be entered. Unfortunately, Plaintiff has been duly released from the Kenosha County Jail and retaliatory punishment of these Defendants, and can now adequately respond to these pleadings, rather than sitting in the County Jail without paper, pencils, stamps, access to law books, and other punitive measures to keep plaintiff from responding, just as alleged in Plaintiff's Complaint, and as previously seen after the August 17, 2007, hearing before Judge Cleavert. Plaintiff, if necessary, will provide documentation to the Court of retaliatory arrests and incarcerations immediately following said hearing, and will further show, by way of documentation, that the retaliation by these Defendants continues to the present time and date, each and every time Plaintiff is placed under their care, custody, and control, which conditions continue to get worse with each period of confinement.

## LEGAL ANALYSIS AND AGRUMENT

Often, a prison or jail document will be a statement by one of the defendants or by an agent of one of the defendants, and can therefore come in an admission by a party-opponent. See Rule 801(d)(2), Fed.R.Evid. In most cases prison or jail documents will be admissible as "records of regularly conducted activity" (often termed "business records")( Rule 803(6), Fed.R.Evid., or public records and reports". See Rule 803(8), Fed.R.Evid. Public records that set forth "factual findings resulting from as investigation pursuant to authority granted by law" may be admitted in their entirety; "opinions" and "conclusions" need not be removed. Beech Aircraft Corp v. Rainy, 488 U.S. 153, 161-170, 109 S.Ct. 439 (1988). Fortunate for Plaintiff, these "public records and reports" submitted by these Defendants contain medical records, reports, notes, and memoranda that are protected by both State and Federal law, that these Defendants had no right or authority to seek, acquire, and divulge as the Defendants have done in this case. As such, the Intracorporate conspiracy doctrine should not apply because of the egregious circumstances regarding the Plaintiff.

The relevant statute at issue is the federal statute prohibiting a conspiracy to interfere with a person's rights. Under 42 U.S.C. § 1985(3):

> "If two or more persons in any state or territory conspire...for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protections of the

> laws, or of equal privileges and immunities under the laws, or for the purpose of
> preventing or hindering the constituted authorities of any state or territory from giving or
> securing to all persons within such state or territory the equal protection of the laws...the
> party so injured or deprived may have an action for the recovery of damages occasioned
> by such injury or deprivation, against one or more of the conspirators.

Courts have held that in drafting § 1985, Congress operating with the understanding that

employees who were acting to pursue the interests of a corporation could not be treated as conspirators.

Travis v. Gary Cmty. Mental Health Ctr, 921 F.2d 108 (7th Cir. 1990). Section 1985 has thus been

interpreted as a statute aimed at preserving independent decisions by workers or businesses, without the

pressure that may be generated by conspiracies. Id. Thus, intracorporate discussions have been viewed as

outside the domain of § 1985. This principle, commonly referred to as the "intracorporate conspiracy

doctrine", establishes that corporate managers who are "jointly pursuing its lawful business do not become

'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory."

Wright v. Ill. Dep't of Children & Family Services, 40 F.3d 1492 (7th Cir. 1994)(aff'd Dombrowski v.

Dowling, 459 F.2d 190 (7th Cir. 1972); and Travis v. Gary Cmty. Mental Health Ctr, 921 F.2d 108 (7th Cir.

1990).

Courts have further held that this doctrine is not limited to private entities. Beaucratic agencies

that are "functionally equivalent of corporations in that their employees and officials jointly endeavor to

provide a product or service and reach decisions pursuant to a unified, hierarchical structure" also are

entitled to the protection of this doctrine. Wright v. Ill. Dep't of Children & Family Serv., 40 F.3d 1492 at

43, Such protection can be applied equally to supervisors and subordinates provided that they are working

in the best interests of the corporation or the governmental entity. Payton v. Rush-Presbyterian St. Luke's

Medical Ctr. 184 F.3d 623, 632-33 (7th Cir. 1999).

An agent's actions within the context of his or her employment will not always be shielded. Volk

v. Coler, 845 F.2f 1422, 1466 (7th Cir. 1988). Exceptions to the intracorporate conspiracy doctrine arise in

the presence of "egregious circumstances." Payton, 184 F.3 at 633. Though not precisely defined, courts

have noted that conduct which demonstrates, for example, "personal racial animus" constitutes an

"invidiously discriminatory motivation" that falls outside the reach of the doctrine. Hartman v. Bd. Of Tr.

Of Cmty. Coll. Dist. No. 508, 4 F.3rd 465 (7th Cir. 1993). Thus, such behavior could give rise to a

conspiracy claim under § 1985(3). Id. The doctrine has also been held inapplicable when employees are

motivated by personal bias. Id. At 23. In such an instance, the interests of the corporation are deemed to have played no part in the employees' collective action and could not, therefore, have been taken within the scope of their employment. Id. As noted by the Court in Volk:

> "It makes no sense to immunize illegal discriminatory activity clearly because the activity arose in a corporate setting." 845 F.2d 1422, 1467 (quoting An-Ti Chai v. Mich. Tech. Univ., 493 F.Supp. 1137 (W.D.Mich 1980).

In the present case, the actions of Defendants Preston, Van Tine, Johnson, Reid, KCCHS, Kenosha County Sheriff's Dept, Barry, Cole, and Perlberg cannot be construed as conduct that is worthy of protection under the intracorporate conspiracy doctrine. Even if their actions fall within the scope of their employment – and thereby clear the initial hurdles of the doctrine – their acts cannot thereafter be shielded because they resulted in an ingoing deprivation of Plaintiff Mentek's fundamental due process and equal protections rights that were clear violations of both Wisconsin Statutes and the U.S. Constitution. It is unreasonable to believe that Congress intended to afford protection to even government bureaucracies when, as in the present case, their acts violated State statutes and federal protections under the Constitution, at times even to the point of committing criminal acts.

Because of the egregious actions of Defendants Preston, Van Tine, Johnson, Reid, KCCHS, Kenosha County Sheriff's Department, Barry, Cole, and Perlberg, which criminal acts continue to the present time and date, such conduct demonstrates a personal bias, coupled with violations of both State and Federal statutes that should not be deemed protected acts under the intracorporate conspiracy doctrine. Therefore, the Defendant' motions seeking to dismiss and seeking summary judgment should be denied.

### PLAINTIFF'S VERIFIED COMPLAINT INCLUDES MERITORIOUS CLAIMS BROUGHT UNDER FEDERAL LAW, THEREFORE, SUPPLEMENTAL JURISDICTION SHOULD APPLY

Defendants assert that supplemental jurisdiction should not apply in this case, (see Affidavit of Bernard Vash), either because all of the federal law claims should be dismissed or because the Complaint "fails to state any federal law claims." (Also see Defendants' Proposed Findings of Fact and Conclusions of Law, at sec. XIII, para. 203 – 215).

Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which holds:

> "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such

> original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

A district court's original jurisdiction derives from federal claims, and accompanying state-law claims will fall within a court's supplemental jurisdiction if they "derive from a common nucleus of operative facts," such that the relationship between federal and state claims "permits the conclusion that the entire action before the court comprises but one constitutional case." Groce v. Eli Lilly & Co., 193 F.3d 496, 500 (7th Cir. 1999)(quoting City of Chicago v. Int'l Coll. Of Surgeons, 522 U.S. 156 (1997)).

In the present case, the Complaint sets forth claims that arise under 42 U.S.C. §§ 1983 and 1985. (See verified Complaint of Plaintiff). For the reasons previously noted, the state-law claims – which together with the federal claims comprise one constitutional case – and should not be dismissed.

In sum, this Court has federal question jurisdiction over the claims brought pursuant to 42 U.S.C. §§ 1983 and 1985. Because the state-law claims arise from the same case or controversy, or from the same nucleus of operative fact, this Court has discretionary authority to exercise supplemental jurisdiction over the claims arising under state law. Therefore, the Defendants' motions seeking to dismiss all state-law claims should be denied.

## LEGAL FOUNDATION OF PLAINTIFF'S CLAIMS AND REQUEST FOR JUDGMENT ON THE PLEADINGS

First and foremost, it must be remembered that an agency "…is bound by the rules or regulations promulgated for them by the legislature…" See Vitarelli v. Seaton. Clearly, Plaintiff was denied both procedural and substantive due process of law, resulting in deliberate indifference to his rights duly set forth by the Free Establishment Clause and Free Exercise Clause of the U.S. Constitution. Furthermore, these Defendants unquestionably violated both Article 1, Sec. 18 and 19 of the Wisconsin Constitution, attempting to use "incompetence", as set forth by Defendants Caldwell, O'Keefe, and Shotick, as the basis for punitive segregation and confinement, then came up with another story, that being "segregated confinement" was a part of the "classification process", then stated that the reason was due to "psychological recommendation". (See both Plaintiff's verified Complaint and the Exhibits attached hereto).

## ALL DEFENDANTS TO THIS ACTION VIOLATED THE "EXCESSIVE ENTANGLEMENT CLAUSE" OF THE FIRST AMENDMENT, THUS, NONE OF THE DEFENDANTS TO THIS ACTION ARE ENTITLED TO ANY KIND OF IMMUNITY

As none of these Defendants are entitled to any kind of immunity, as they have willfully not only violated their own policies and procedures, but also have egregiously violated Plaintiff's Constitutional rights on numerous occasions, causing irreparable injury and damage to Plaintiff that continues to the present time and date, Plaintiff has clearly set forth and firmly established the denial of immunity to all Defendants by and through written documentation in both Plaintiff's verified Complaint and this Brief, i.e., Defendants' own Exhibits used by Plaintiff to establish similar forms of "punishment" cach and every time he goes to the Kenosha County Jail.

While the majority of the Defendants to this action are state or county officials, including a Circuit Court Judge, Administrative Law Judge, several Assistant District Attorneys, several Probation Officers, several Police Officers, multiple Kenosha County Sheriff's Department employees, physicians, etc., immunity will be called into question, as all Defendants involved earnestly bclieve in their minds that they can violate "well-established" constitutional principals and then simply hide behind the cloak of "qualified", "absolute", "sovereign", "judicial", or some other form of immunity. Fortunate for Plaintiff, cases such as Harlow v. Fitzgerald, exist to "strip" all these parties of immunity in such instances, which subsequently applies to all Defendants to this action. Accordingly, loss of immunity applies even to Defendants Barry, Cole, and Perlberg as these Defendants acted in excess of his or her authority. Stump v. Sparkman, 435 U.S. at 355-56. In fact, immunity does not protect a judge who acts in the clear absence of all jurisdiction. Stump, 435 U.S. at 356-57. The phrase "clear absence of all jurisdiction" means to act "without color of authority." 48A C.J.S. *Judges* § 86 at 693 (1981). When all Defendants to this action intentionally crossed the line of "Excessive Governmental Entanglement" jurisdiction was, in fact, lost. "It is well settled that excessive governmental entanglement with religion will occur if the Court is required to interpret church law, policies or practice, therefore the First Amendment **'PROHIBITS'** such an inquiry." See Isley,, 880 F.Supp. at 1150; Moses v. Diocese of Colorado, 863 P.2d 310, 320 (Colo. 1993), Pritzlaff, 194 Wis.2d 302, 533 N.W.2d 780 (1995). (Also see transcripts attached to Plaintiff's vcrified Complaint.)

In the case at bar, all Defendants have breached this Constitutional prohibition, substituting their own beliefs and interpretations in place of Plaintiff's religious and practices, despite the holdings of 2 Peter 1:20, which states, in part, "…Knowing this first, that no prophecy of the scripture is of any private interpretation. For the prophecy came not in old time by the will of man: but holy men of God *spoke as they were* moved by the Holy Ghost." Id.

Cases such as Harlow v. Fitzgerald, in fact, exist to not only strip these Defendants of any kind of immunity they believe they may have had, due to the intentional and deliberate violation of "well-established constitutional principles", but is clearly "well-established" case law. Furthermore, Plaintiff also repeatedly made them aware of these constitutional violations and the protection afforded under both the Wisconsin and U.S Constitution, repeatedly, in writing, to prove that they had absolutely no regard for the rights and privileges secured as safeguards under the Constitution. (See Request for Medical Care forms attached to Plaintiff's verified Complaint). Instead of adhering to these Constitutional safeguards, these Defendants responded, in writing, "…legal threats will not be tolerated…". Id. (See attached medical records and statements made by Defendant Joanne Medley).

Under the "Free Exercise Clause", a law or rule that burdens religious practice need not be justified by a compelling government interest if neutral and of general applicability. Employment Div. Dept. of Human Resources of Ore v. Smith, 494 U.S. 872. However, where such a law is not neutral or not of general application, it must undergo the most rigorous scrutiny: it must be justified by a 'compelling governmental interest', and must be 'narrowly tailored' to advance that interest. Neutrality and general applicability are interrelated, and failure to satisfy one requirement is a likely indication that the other has not been satisfied.

At a minimum, the protections of the "Free Exercise Clause" pertain if the law or rule at issue discriminates against 'some or all religious beliefs' or regulates or prohibits conduct because it is undertaken for religious reasons. Brauenfeld v. Brown, 366 U.S. 599, 607 (1961)(plurality opinion); Fowler v. Rhode Island, 354 U.S. at 69-70.

Accordingly, the Court indicated in Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972), that the determination of what is a "religious belief or practice" is more often that not a difficult and delicate task, as the Supreme Court attests. However, the resolution of that question is not to turn upon a "judicial

perception" of that particular belief or practice in question; "...religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection..." Id.

In our "Establishment Clause" cases, the Court indicated that they have often stated the principal of the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general. See, e.g. Board of Ec. Of Westside Community Schools (Dist. 66) v. Mergens, 496 U.S. 226,, 248 (1990); School Dist. Of Grand Rapids v. Ball, 473 U.S. 373, 389 (1985); Wallace v. Jaffree, 472 U.S. 38 (1985).

The "Free Exercise Clause", like the "Establishment Clause", extends beyond facial discrimination. The Clause "forbids subtle departures from neutrality", Gillette v. United States, 401 U.S. 437, 452 (1971), and "covert suppression of particular religious beliefs." Bowen v. Roy, supra, at 703. Official action that targets religious conduct for "distinctive treatment" cannot be shielded by mere compliance with the requirement of facial neutrality. The "Free Exercise Clause" protects against governmental hostility which is "masked as well as overt." "The Court must meticulously survey the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." Id. Walz v. Tax Com'n of New York City, 397 U.S. 664, 699 (1970).

In determining if the object of the law is a neutral one under the "Free Exercise Clause", we can also find guidance in our equal protection cases. As Justice Harlan noted in a related context of the "Establishment Clause", "...[n]eutrality in its application requires an equal protection mode of analysis." Walz, 397 U.S. at 696. Here, as in these cases, we may determine the Defendants intent from both direct and circumstantial evidence. Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266 (1977). Relevant evidence includes, among other things, the "historical background" of the decision in question, and the legislative or administrative history with the Plaintiff, including contemporaneous statements made by members of the decision making bodies. These objective factors bear on the question of discriminatory intent, Personnel Administrator of Mass v. Feeney, 442 U.S. 256, 279 n.24 (1979) and the documentation attached to this Brief clearly shows that these violation were ongoing prior to the 12/25/05 period of incarceration. Furthermore, during the prior 35 periods of incarceration, Plaintiff was never placed on any kind of "administrative segregation", and never had a "conduct report", or "confrontation" with any of these Defendants, despite the physical abuse that was

repeatedly inflicted upon Plaintiff by other unnamed employees of the Kenosha County Sheriff's Department, which shall be addressed in separate cases, as Plaintiff has (7) other suits yet to be filed.

In the "Proposed Findings of Fact and Conclusions of Law" of Defendants, these Defendants tried to say that Plaintiff was placed into a "segregated setting" due to an alleged "...bizarre behavior...", then attempted to change their story to one of "...medical recommendation...", then changes their mind again, justifying the segregated and isolated status as being "...part of the classification process and processing..." (See Defendants Proposed Findings of Fact and Conclusions of Law. Also see Affidavits of Defendants Preston, Van Tine, Johnson, and Reid). In addition to these "conflicting statements", sworn to "under oath and penalty of perjury", the Exhibits attached to Defendants' Affidavits fully "support" Plaintiff's claims, particularly as to violation of State and Federal law as it pertains to release of medical information and records by Plaintiff. As is obvious, these Defendants have committed "perjury" before this Court, which simply cannot go unpunished or disregarded, particularly when their actions have violated criminal laws, including violations of HEPPA in the procurement of medical records and documents without Plaintiff's "informed consent."

It is well settled that excessive governmental entanglement with religion will occur if the Court or other decision making body is required to interpret church law, policies, or practices, "...therefore the First Amendments **FORBIDS** such an inquiry..." Id. (emphasis added for effect). See Isley, 880 F.Supp. at 1150, Moses v. Diocese of Colorado, 863 P.2d 310, 320 (Colo. 1993), Pritzlaff, 194 Wis.2d 302, 533 N.W.2d 780 (1995).

Accordingly, it must be understood that Plaintiff has already had his own "entanglements" with several of the agencies and Defendants, which duly resulted in reversal of a criminal conviction by the Wisconsin Supreme Court in SXR Mentek v. Schwarz, 2001 WI 32, 242 Wis.2d 94, 624 N.W.2d 150, and subsequent release after nearly (6) years of illegal confinement by defendants who believed that Plaintiff had no constitutional rights, whatsoever. As quoted by Chief Justice Shirley Abrahamson, "...Despite nearly three years of legal efforts remarkable for a pro se litigant filing from behind bars, Mentek has yet to receive meaningful judicial review of his allegations. In contrast, the State has thus far avoided the merits of Mentek's challenges by relying on a statute that on it's face is inapplicable to the facts of the present case...The records suggests that he has made 'credible legal arguments' in his pro se filings in the Circuit

Court and Court of Appeals, and the documents filed with Mentek's petition provide factual support for his allegations…" Id. At 102-104. The same can be said for the case at bar. As such, all Defendants must be denied any form of immunity, including Defendants Barry, Perlberg, and Cole.

## CONCLUSION

As set forth above, Defendants Barry, Perlberg, Cole, Kenosha County Sheriff's Department, Preston, Van Tine, Johnson, Reid, and KCCHS' motions are without merit for the following reasons: First, the actions of all Defendants occurred in the absence of all jurisdiction, having crossed over the "Excessive Governmental Entanglement" provision of the First Amendment to the U.S. Constitution. Therefore, they should not be entitled to any form of immunity. Second, the actions of all Defendants violated "well-established" constitutional principles which they knew or should have known. Thus, liability has attached for the damages and injuries suffered by Plaintiff. Third, the federal and state-law claims in this case arise from the same nucleus of operative fact, thereby comprising on constitutional case. Therefore, the state-law claims fall within this Court's supplemental jurisdiction. Fourth, these Defendants have gone as far as committing "criminal acts" in violation of both state and federal law in order to "punish" and "ahuse" Plaintiff in violation of "well-established" constitutional principles which these Defendants knew or should have known.

This Court further needs to take "Judicial Notice" of the Complaint filed by Plaintiff, as Plaintiff verified each and every allegation and fact under penalty of perjury, as required under 28 U.S.C. § 1746, allowing the Complaint and attached documents to be incorporated herein by reference as if fully set forth, and to support this Request for Judgment on the Pleadings.

**WHEREFORE,** for the foregoing reason, as set forth both in Plaintiff's verified Complaint, as well as this Brief and Statement of Disputed Facts and Brief in Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment, Plaintiff prays that this Court enter Judgment on the Pleadings in favor of the Plaintiff, awarding Plaintiff actual monetary damages as requested against each Defendant in the verified Complaint of Plaintiff, awarding Plaintiff punitive damages as requested against each Defendant in the verified Complaint of Plaintiff, enter an Injunction/Emergency Restraining Order preventing Defendants from seeking, obtaining, and divulging any more of Plaintiff's federally protected medical information, as well as monetary damages in this regard amounting to $250,000, awarding Plaintiff all costs and disbursements in this action, and further awarding any other relief that this Court deems just and equitable.

Dated this 17th day of November, 2007.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

James A. Mentek Jr.
Plaintiff Pro Se
7711 – 18th Avenue
Kenosha, WI 53140

Cc:     Clerk of Federal Court
        A.A.G. David Rice – Dept. of Justice
        Atty. Julie P. Wilson – Crivello & Carlson
        ACLU
        File

NAME: _Menlee Janis_    INMATE ID#: _7644B_    DOB: _/65_

ALLERGIES: _No NSaids_

| DATE/TIME | FOCUS | NOTE |
|---|---|---|
| 5/29/05 | Post entry | When family brought in lacenteel sample pkg they stated he was taking it for seeizures ⟶ Tallburia |
| 6-25-05 /1145 | Restraint Chair | Seen in zone 1 for restraint chair; all extremities warm & dry; strong radial + pedal pulses ———— (Medley) |
| 12-26-05 | psych | Seen by Dr. Caldwell - no new recommend this. E Beaulieu |
| 12-27-05 | psych | Seen by Dr. O'Keefe - no new recommend this at this time ———— E Beaulieu |
| 1-2-06 | PSYCH | Pt was seen by Dr. O'Keefe who made some medication recom. PC to Dr. Shotick, See MD orders. ———— BOberhart LPN |
| 1-3-06 | seg ✓ | Pt. was seen by Dr. Shotick; Ø new orders. BOberhart LPN |
| 1-17-06 0730 | THREAT | Pt. came forth at med. pass and wanted to know what meds. he was taking. He was (delete) taking. (delete) I showed him his envelope and he quickly wrote down his meds. He then asked what Dr. prescribed them. When I told him "Dr. Shotick" he said he refused his meds. but he needs this info. for a lawsuit. He stated "You said I couldn't come out of admin. seg. if I didn't take that medicine. You can't force me to take medication." Writer responded |

EX 1A

Kenosha County Detentions Division

Patient Name:  Mentek, James                          ID#   7644 B          Page # _____

| DATE | TIME | PSYCH INTERVENTION NOTES | SIGNATURE |
|-------|------|--------------------------|-----------|
| 12/26 | AM | I/m was seen at the request of security due to bizarre behavior and agitation. I/m's behavior and self-report are consistent with a manic episode with psychotic features. He reports racing thoughts and indicated significant decreased sleep. His behavior is characterized by grandiose delusions. He reports that he is Jesus, the son of God. Speech is fast-paced and pressured. He adamantly refused to take medication if prescribed, reporting indignation regarding a previous hospitalization and failure to comply with prior prescriptions. Follow-up will occur within the week to monitor decompensation. | W C_ooi,Pis |
| 12/27/05 | | R. seen for eval. He remains acutely mentally ill. w/ manic delusional delas. States he is Jesus Christ. R. in need of inpatient psych treatment. Hospitalization + comm. or placement. me decateer. | Saldolff, Ph.D. |
| 12/30/05 | | R. seen for f/u. Very angry paranoid threatening. R. not a danger able to make any judgements about his own care. | Saldolff, Ph.D. |

EX 1B

NAME: Mentek, James                    INMATE ID# 7644-B
   NO NSAIDS                    DOB ████ 65    Page #

| DATE | PHYSICIAN INTERVENTION NOTES AND ORDERS | SIGNATURE |
|------|------------------------------------------|-----------|
| 1-2-06 1600 | — Provide Haldol 5 mg. (ī tab. BID) | |
| noted | — Cogentin 1 mg. (ī tab. BID) | |
| 12-06 | — Valproic acid 250 mg. (ī tab. AM, ī̄ tab. PM) | |
| BO/LPN | per Dr. O'Keefe's recommendation | |
| | PO Dr. Shuttic / DOBehart LPN | |
| | | |
| | | |
| | | |
| 1/3/06 | Seg Check — | |
| noted 1-3-06 BO/LPN | Raging + raving about religion — loudly | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

EX IC

Kenosha County Detentions Division

Patient Name: _Mantek, James_____ ID#_____ Page #_____

| DATE | TIME | PSYCH INTERVENTION NOTES ☞ | SIGNATURE |
|------|------|-----------------------------|-----------|
| 1/9/05 | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 1/4/05 | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 3/9/06 | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

EX 1D

NAME: Mendel James    INMATE ID#: 7644    DOB: ___/65

ALLERGIES: No NSaids

| DATE/TIME | FOCUS | NOTE |
|---|---|---|
| 1-17-06 (cont.) | | that I certainly never told him that and he always has the right to refuse his medication. — Coverhart LPN |
| 3-6-06 /1130 | Work crew | Dept. Ron asked if pt. was okay on work crew, informed pt. has mental issues no meds & has been writing threatening notes to HSV; advised Dept. to contact Lt. VanLine re: work crew — Neally RN |
| 030606 | transfer | Enters KCPC from KCJ with some meds. It is noted pt. has refused medication since 1/10/06 & last note from Dr. Shutel 1/5/06 & Dr. O'Keefe 1/4/05. Pt. placed on special watch in dorm until he sees the Dr. to see how he adjusts to a dorm environment. See E-mail. — K. Diehl |
| 030606 2100 | Refuses meds | Seen at med pass. Refuses meds stating medications were prescribed for him at the jail by a Dr. He never saw & there is no Chapter 51 order for him to take them. Refuses medication. States I only have 9 days here anyway. Pt. (I) he is scheduled to see the jail Dr. tomorrow. Agreeable. Pt's speech rapid and body language hyper. On wellness checks while in dorm til until sees MD — K. Lih |
| (EX) (1E) | | |
| 3-7-06 | MD | pt. seen by MD re: ___ |

NAME: *MENTER, JAMES*                    INMATE ID# *7644B*
        DOB ⬛⬛⬛ *65*    *NO NSAIDS*        Page # _____

| DATE | PHYSICIAN INTERVENTION NOTES AND ORDERS | SIGNATURE |
|------|------------------------------------------|-----------|
| 13 01-06 | | |
| | Tep 97.7 (°), b/p 106/78, HR: neg 72, R12 18 | |
| | S. Grandiose, animated, agitated, | |
| | religious fixation, refusing to take | |
| | antipsychotic meds. Refuses to sign | |
| | release form for refusing psych meds | |
| | He's already started WNK team, and is | |
| | apparently being released in 6 days | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

12/95
Phyntec.xls    *EX 1F*

| **NAME:** Mentek James ▆165 | | **INMATE ID#** 76.44·8<br>**Page #** ___ |
|---|---|---|
| **DATE** | **PHYSICIAN INTERVENTION NOTES AND ORDERS** | **SIGNATURE** |
| 3/8/06 | DIC Huldd Sing B.I.D | |
| | Cogentin 1mg B.I.D. | |
| | Valproic acid 35cmg Am 50cmg PM | 14.06 |
| | per pt's written request | |
| | Dr. Shonelc / Hauli | |
| | | |
| | | |
| | | |
| 10-26-06 | To see psych dr. | errar |
| 10-26-06 | T.O. Dr. Shotick / Medley RN | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

12/95
Phyntec.xls

EX 1G

Kenosha County Detentions Division

Patient Name:  Mentek, James _____  ID#  7644 B _____  Page # _____

| DATE | TIME | PSYCH INTERVENTION NOTES | SIGNATURE |
|------|------|--------------------------|-----------|
| 9/17/06 | AM | I/m was seen at the request of security. A MHRA was completed. As in previous incarcerations, he is exhibiting bizarre behavior and significant agitation. His behavior is characterized by grandiose delusions. He reports that he is Jesus; that he has died many times and been resurrected. He is also quite hostile, stating that he is suing Kenosha Co. and this author for religious persecution. Speech is fast-paced and pressured. Tone of voice is "sing-song-y". I/m adamantly refused to take medication if prescribed. Although the i/m denies thoughts, plans, or intent to harm himself or others, he is exhibiting significant agitation and hostility suggesting that he might be at risk for harm to himself or assaultive behavior. It is recommended that he be placed on Level 1 suicide watch.

Note: following this contact, the i/m punched out his cell window and was placed in a restraint chair. ———— | _M. (at 0 a. ..._ |
| 9/19/06 | | _[handwritten notes]_ | |
| | | | |
| | | | |
| | | | |
| | | | _[signature] Ph.D_ |
| 9/18/06 | | _[handwritten notes]_ | _[signature]_ |
| | | | |
| | | | _[signature] Ph.D_ |
| | | | |
| | | | |

NAME: _MENTEK, JAmes_   INMATE ID#: _7644B_   DOB: _____ 65

ALLERGIES: _VC NSAIDS_

| DATE/TIME | FOCUS | NOTE |
|---|---|---|
| 030706 | MED Refusal | FC from DSC Pt state ios talked to |
| | | Ses buged i will not sign the |
| | | me/ reknial form ⊘ - sow will |
| | | be bright to dan    Klr |
| 3.8.06 0745 | Medican | pt sun this am in laundry working |
| | | approached nurse states - you know |
| | | I dona take Medicaton" - Advise pt |
| | | Written request to not TAIG medication |
| | | was rec'd. - pt states "thank you" - |
| | | Walked away    HP |
| 0945 091706 | restraint chair | @ 0945 called down to zone 1 to check |
| | | pt in restraint chair good brachial, |
| | | apical, pedal d wrist pulses, 5pc0)6 100 l |
| | | P98 skin Warm, dry d pink in cdor |
| | | continue to monitor    JM |
| 091706 | psych | Dr Caldwell in to see pt. see psych |
| | | note    J. |
| 091706 | restraint chair | @ 1035 pt. Remored from Restraint Chair J |
| 091706 2:10 | well | Seen in zone 10 PH-cc. in suicide |
| | | sown. good eye contact. would not |
| | | answer questions. Reported by swearing, |
| | | agitated    J |
| 091806 0800 | well | pt seen down in zone 1 protective holding |
| | | for wellness check. pt state doing fine denied |
| | | even having thoughts of SI + didnt under stand |
| | | why he was in protective holding. pt contract good. |

FX 1 L

## KENOSHA COUNTY SHERIFF'S DEPARTMENT
## TRANSPORTING OFFICER OBSERVATION SUMMARY
(To be completed by Transporting Officer)

*This form must be completed for each Inmate PRIOR to being accepted for incarceration at the Kenosha County Jail. A 'YES' answer to any question requires immediate notification of a Detention Division Supervisor.*

Inmate Name: MENTEK, JAMES, A   Sex: M   Race: W   D.O.B.: ⬛⬛⬛ 65

1.) Does the inmate have any infectious disease?   YES ___   NO ___
If yes, please explain: ___ UNKNOWN ~ CLAIMS TO BE IMMORTAL ___

2.) Did the inmate exhibit any at risk or harmful behavior during the arrest or transport?
YES ___   NO ✓   If yes, please explain: ___

3.) Did the inmate make any suicidal gestures or statements during the arrest or transport?
YES   ( NO )   If yes, please explain: ___

I, P.O. Guppy ___ / KPD / 327 ___, hereby certify that the statements
(Arresting Officer Name)   Agency   Unit Number)
made on this form regarding the behavior, demeanor, and basic mental health of this inmate are conclusive and reliable as they relate to my contact with the inmate during the arrest and subsequent transport to the Kenosha County Jail.

Transporting Officer Signature: P.O. Jim Jay 327 Date: 12-25-05
Received by: ___ Intake C/O's initials ___ C/O Unit # ___ Date: 12-25-05

Detention Supervisor Signature: ___   Date: ___
*(Required only when a 'yes' answer is marked.)*
Crisis Intervention Notified?  YES ___   NO ___

EX 2A

*ORIGINAL TO INMATE FILE*

H:\Forms\Mental Health\TransOffObSum.doc     08/18/04     TO BE COPIED ON YELLOW

1306 Spoke w/ Corp. Keiser about Mantek not answering #1.

# INVESTIGATION REPORT

| NCIDENT REPORT ☐ CRIME — PROPERTY ☐ CRIME — PERSON | CLASS _____ CODE _____ | DATE & TIME REPORTED 12-25-05 0757 | PAGE 1 OF 4 | JURISDICTION GRID | CASE OR EVENT NO. 2005-177490 |

| #PLAINANT/REPORTING PERSON — NAME (FIRM NAME, IF BUSINESS) | | | | SEX | RACE | DOB | RESIDENCE PHONE | BUSINESS PHONE |
| LAST P.O. GRIFFEY | FIRST | | MI | | | | | |

| JDENCE ADDRESS KPD 1000 - 55ST | CITY | STATE | ZIP | EMPLOYMENT OR SCHOOL KPD | | CITY |

| ME OR INCIDENT Carrying Concealed Weapon | DATE — TIME OCCURRED 12-25-05 0757 | WEATHER — LIGHT CONDITIONS CLOUDY / DAYLIGHT |

| SCRIBE LOCATION OF OFFENSE OR TYPE OF PREMISE CITY STREET | ADDRESS OR LOCATION OF INCIDENT 4400 BLK 22 AVE |

| SPECT/ XLEN #CLE | MAKE PONT | MODEL GPRIX | BODY TYPE 2DR | COLOR WHT | YEAR | VIN. 1G2WJ14TXLF303620 | LICENSE | STATE | YEAR | IDENTIFYING CHARACTERISTICS |

| APON, TOOL, OR MEANS OF ATTACK SWORD | METHOD USED TO COMMIT CRIME — M.O. WRAPPED IN PINK TOWEL |

| ADEMARKS OF SUSPECT(S) ACTION OR CONVERSATION SPOKE IN TONGUES | NATURE OF INJURIES AND LOCATION ON BODY — VICTIM'S CONDITION N/A |

| PE OF PROPERTY TAKEN/DAMAGED — SEE STOLEN PROPERTY REPORT ☐ N/A | SERIAL OR I.D. — | TOTAL LOSS VALUE | RECOVERED ☐ YES ☐ NO |

| SCRIPTION OF PROPERTY — MAKE, MODEL, COLOR N/A | LICENSE NO. — | STATE — | YEAR — |

**MMARY OF CRIME OR INCIDENT**

AN ADULT MALE WAS ARRESTED FOR C.C.W. & PLACED N KSD JAIL ON A P.O. HOLD AFTER A D.C. INVESTIGATION T HOLY ROSARY CHURCH. THE SUBJECTS VEHICLE WAS TOWED BY J & M.

CIRCUIT COURT

IN JAIL

## NO CONSENT FORM

I, _____, HAVE GIVEN NO ONE CONSENT TO

_____

WITNESS _____ SIGNED _____

DATE _____

| EVIDENCE RECOVERED SWORD | DISPOSITION OF EVIDENCE / LOCKER PC# 120061 / #440 | VICTIM RIGHTS FORM ☐ YES ☑ NO | PHOTOS ☐ YES ☑ NO | SKETCHES/DIAGRAMS ☐ YES ☐ NO |
| ☐ YES ☐ NO | | | | |
| NCIC/CIB | INQUIRY/ENTRY | TTY CANCELLED | DATE–TIME | STATUS ☑ CLEARED BY ARREST ☐ OPEN ☐ CLOSED ☐ UNFOUNDED | UNIT REFERRED TO |
| REPORTING OFFICER Guffey | NO. 327 | 2ND OFFICER | NO. | SUPERVISOR | |
| J/S 100-99 | | | | | |

COUNTY OF KENOSHA — SHERIFF'S DEPARTMENT ☐

CITY OF KENOSHA — POLICE DEPARTMENT ☑

SUPPLEMENTARY INVESTIGATION REPORT

CASE OR EVENT NO. 20 05- 177490    NO. OF PAGES 2 OF 4

DATE OF SUPPLEMENTARY 12-25-05

DATE — TIME REPORTED 12-25-05   0752

INVOLVED PARTIES

CODE - V - VICTIM, S - SUSPECT, W - WITNESS, C - COMPLAINANT, PO - PERSON ORDERING, etc.

| | | | | | |
|---|---|---|---|---|---|
| I | NAME MENTEK | FIRST JAMES | MI A | DOB 05-05-65 M W | SOCIAL SECURITY OR DRIVER'S LICENSE NUMBER (IF APPLICABLE) |

ADDRESS 4035 - 28 AVE # 9    KENOSHA, WI   53140    PHONE 205-8661

NAME LAST _____ FIRST _____ MI _____ DOB _____ RACE/SEX _____ DRIVER'S LICENSE NUMBER (IF APPLICABLE)

ADDRESS _____ CITY-STATE-ZIP _____ PHONE

ON SUN. 12-25-05 AT 0752 HRS, I, P.O. GRIFFEN RESPONDED WITH P.O. PETERSON, TO A D.C. COMPLAINT

NAME LAST _____ FIRST _____ MI _____ DOB _____ RACE/SEX _____ DRIVER'S LICENSE NUMBER (IF APPLICABLE)

ADDRESS _____ CITY-STATE-ZIP _____ PHONE

AT HOLY ROSARY CHURCH 4416- 22 AVE, AN ADULT M/W WAS LOCKED OUT OF THE CHURCH AFTER HE WAS YELLING OUTSIDE AND POUNDING ON THE CHURCH DOORS. THE SUBJECT WAS DESCRIBED AS A M/W, WEARING A JEAN COAT, AND WAS SAID TO HAVE GOTTEN BACK IN HIS VEHICLE, A WHITE PONTIAC ACROSS THE STREET IN FRONT OF THE CHURCH. UPON MY ARRIVAL, I OBSERVED A WHITE PONTIAC GRAND PRIX, WITH NO REAR REGISTRATION PLATE, OCCUPIED BY THE DESCRIBED SUBJECT IN THE DRIVERS SEAT. THE VEHICLE WAS PARKED IN A POSTED NO PARKING ZONE, APPROX. 2FT FROM THE EDGE OF THE SNOW BANK / CURB. THE VEHICLE REAR LIGHTS / BRAKE LIGHTS WERE ON.

THE SUBJECT IN THE VEHICLE WAS IDENTIFIED WITH A WDL PHOTO ID AS JAMES MENTEK. MENTEK WAS DRINKING A CUP OF WATER AND LOOKING AT A BIBLE. MENTEK APPEARED AGITATED AND BEGAN SPEAKING AS THOUGH HE WAS RECITING PASSAGE OF THE BIBLE. AT TIMES, MENTEK SEEMED TO BE SPEAKING IN TONGUES - UNINTELLIGIBLE UTTERANCES, ACCOMPANYING RELIGIOUS EXCITATION. MENTEK SAID HE WAS UNABLE TO GET INTO HOLY ROSARY & SAID HE WOULD GO TO ANOTHER CHURCH. MENTEK WAS BECOMING MORE AGITATED AND BEGAN RANTING AND RAVING, SPEAKING OF THE BIBLE.

REPORTING OFFICER P.O. GRIFFEN 327

2ND OFFICER

SUPERVISOR

JVS 10/84

COUNTY OF KENOSHA — SHERIFF'S DEPARTMENT ☐

CITY OF KENOSHA — POLICE DEPARTMENT ☑

SUPPLEMENTARY INVESTIGATION REPORT

| CASE OR EVENT NO. | NO. OF PAGES |
|---|---|
| 2005-177480 | 3 of 4 |

| DATE OF SUPPLEMENTARY | DATE — TIME REPORTED |
|---|---|
| 12 - 25 - 05 | 12 - 25 - 05   075 |

INVOLVED PARTIES

CODE - V = VICTIM  S = SUSPECT ...

**NAME** Menyreks Driving Status was forms to be Suspended, and

**ADDRESS** vehicle had no Registration Plates.  I Advison Montek.

**NAME** was Going to Have his vehicles towed  B it was

**ADDRESS** Creatly Parked and a Potential Traffic Hazard, Menow

**NAME** was Places Close for Myself as  P.O. Petoson to

**ADDRESS** Locally Park the vehicles as How Rostry had Mass

Services Going on, and the near by Schools were

full of Parking vehicles. Menyok at times stores

profanity and said he would Park his car at

his house.  I informed Menyok he could not

Move his vehicle as he is suspended then WI DOT

Menyok remained agitated, reached over to the

Passenger side of his vehicle (front seat), and

grabbed a piece of something in a pink towel.

As Menyok moved the object towards the open

windows Door,  I observed a silver metalic blade

F Some Sort.  I immediately took it away

from Menyok, at which time the stores it was

the sword of Gideon, engraved by the Hand of God.

I was fearful of my safety and subsequently threw

the sword on to the sidewalk.  I subsequently

Placed Menyok in the rear of my squad, and further

secured his vehicle.  The sword, approximately 34"

in length, had engravings of Some type all over it.

Menyok said he was going to Destroy the basin of salt

the city to Cleanse the world, with the sword.

Menyok was subsequently placed under arrest ...

REPORTING OFFICER  P.J. Guppy  327  2ND OFFICER  SUPERVISOR

JJ 101-84  Case 2:07-cv-00239-CNC   Filed 11/26/07   Page 33 of 51   Document 37

EX 2D

COUNTY OF KENOSHA — SHERIFF'S DEPARTMENT ☐

CITY OF KENOSHA — POLICE DEPARTMENT ☑

SUPPLEMENTARY INVESTIGATION REPORT

CASE OR EVENT NO.
2005-177490

NO. OF PAGES
4 OF 4

DATE OF SUPPLEMENTARY
12-25-05

DATE — TIME REPORTED
12-25-05    075

INVOLVED PARTIES

CARRYING A CONCEALED WEAPON FOR THE FOLLOWING REASONS:

THE SWORD, POSSIBLY HOMEMADE, WAS A LARGE METALIC OBJECT WITH A POINTED TIP, THUS A DANGEROUS WEAPON

THE SWORD WAS WRAPPED IN A TOWEL, THUS KEEPING IT CONCEALED IN PLAIN VIEW INSIDE HIS VEHICLE.

- MR. MONTER SAID IT WAS A SWORD.

- THE OBJECT, A SILVER METALIC FLAT BLADE, WITH A POINTED TIP, WAS APPROXIMATELY 34" IN LENGTH, RESEMBLED A SWORD AND APPEARED TO BE A DANGEROUS WEAPON.

MONTER IS CURRENTLY UNDER PROBATION SUPERVISION. PER MY REQUEST, P+P WAS CONTACTED TO SEE IF THEY WANTED A D.O. HOLD PLACED ON MONTER. HE WAS UNDER ARREST FOR C.C.W. P+P PLACED A HOLD ON MONTER. MONTER WAS TRANSPORTED TO KSD JAIL. MONTER WAS UNCOOPERATIVE WITH JAIL STAFF.

HOLY ROSARY CHURCH STAFF DID NOT WISH TO PURSUE A D.C. COMPLAINT.

THE SWORD + TOWEL WERE PLACED IN EVIDENCE PC# 120061 + STORED IN LOCKER # 440

MONTERS VEHICLE WAS TOWED W/ PARKING CITATION BY J+M.

P.C. FORM COMPLETED

REPORTING OFFICER
P·J Gypzy  327

2ND OFFICER

SUPERVISOR

## KENOSHA COUNTY JAIL
## ZONE ONE PROTECTIVE HOLDING REPORT

Inmate Name: _Mentek  James_                                    I.D. # _____

Date of Violation: _12/25/65_                          Time: _1700_

(Check all those that apply)
Supervisors Notified at: _1700_

**Booking Process Completed?**    Yes ☑ No ☐      Drug Use Suspected?  Yes ☑ No ☐

**Intoxication Suspected?**    Yes ☑ No ☐      **Booking Notified?**    Yes ☑ No ☐

**Uncooperative?** ☐      **Combative?** ☐      **Non Violent?** ☑    **Suicidal?** ☐

**Difficulty or Inability to Following Instructions:** ☐

**Restraints Required:** ☐          **Restraint Chair Used:** ☐

**Refused to Obey Orders:** Yes ☐  . No ☑

Narrative: _Inmate to be segregated in W-2 until he realizes_ (for his own safley) _he is not Jesus Christ._

**Injuries to Inmate: Prior to Incarceration:** ☐    **During Incarceration:** ☐    None: ☑

Narrative: _____

**Additional Supplemental Report Form Attached:**    Yes ☐      No ☑

**Arresting Agency:** KSD: ☐    KPD: ☐    WSP: ☐    PPPD: ☐
                    TLPD: ☐    SLPD: ☐    UWP: ☐    DNR: ☐    Other: _____

(Circle One)

**Cell Location:** PH-1, PH-2, X-block cell # _____, O-block cell # _____, Other: _X-4_

Reporting C/O: _N C    1341_          Additional C/O's Assisting: _____

C/O Signature: _____          Supervisor: _____
Distribution: (Original): Inmate File          (Coples): Zone: ☐  Administration: ☐  Nurse: ☐

f:\kcsb\sh\shdata\ZoneOneBlkRpt.doc

②

KENOSHA COUNTY SHERIFF'S DEPARTMENT
PRETRIAL FACILITY

MEDICAL/MENTAL SCREENING
**MEDICAL QUESTIONAIRE**
*To be completed by ARS upon Booking*

Name **Mentck James**   D.O.B. ____-65 Sex **M** Race ____   Weight ____

ID # **7644B- 34**   Date Form Completed **12-25-05** Time ____ Cell ____

*DID ARRESTING OFFICER COMPLETE **OFFICER OBSERVATION SUMMARY** ON THIS*
*INMATE?* ___ *YES* ____ *NO If no, CONTACT SUPERVISION IMMEDIATELY.*

*MEDICAL SCREENING: You are requested to supply the following medical information about yourself to assist this department and medical personnel from the Kenosha County Sheriff's Department Detentions Division in providing necessary care and treatment. Your refusal or untruthful answers to these medical questions may delay delivery of proper treatment.*

| SOCIAL STRESS/SUICIDE RISK QUESTIONNAIRE (If "YES" is answered 3 or more times in questions 1 thru 10, OR if "YES" is answered to questions 6, 7, or 8, a supervisor must be notified. | YES | NO | REF | COMMENTS: |
|---|---|---|---|---|
| 1. (Observation) Are this inmate's charges shocking in nature? | | X | | |
| 2. Have you experienced any of the following: | | | | |
|   Job Loss? | | | | |
|   Arrest of a loved one? | | | | |
|   Death of a loved one? | | | | |
|   Marital separation? | X | | | |
|   Divorce? | | | | |
|   Loss of business? | | | | |
|   Major financial loss? | | | | |
|   Other major problems? | | | | |
| 3. Do you hold a position of authority or respect within your community? | | | | |
| 4. Do you have any home or family problems that we should know about? (If yes, describe) | | | | |
| 5. Have you ever been in a mental institution or had psychiatric care? (If yes, describe) | X | | | St. Lukes    12/04 |
| 6. *Have you ever attempted or contemplated suicide?* | X | | | 1987 |
|   *If yes, when?* | | | | |
|   *Where?* | | | | |
| 7. Are you contemplating suicide now? | | | | |
| 8. *(Observation) Does the inmate's behavior suggest a risk of suicide?* | | | | |
| 9. Do you use drugs or alcohol on a regular basis? If yes, type? Time last used? | | X | | |
| 10. Are you currently seeing a mental health worker/case manager/social worker/ psychologist/counselor/psychiatrist? If yes, who? | | | X | |

Page 1 of 2

| CON'T. MEDICAL QUESTIONS | Y E S | N O | R E F | COMMENTS: |
|---|---|---|---|---|
| 11. Do you have a sore throat, fever, or other infection that may spread throughout the jail? | | X | | |
| 12. Are you on a special diet prescribed by a doctor? If so, what is it? | | | | |
| 13. Are you presently taking any medication? | X | | | albuterol |
| If so, what is it? | | | | |
| Pharmacy used? | | | | |
| 14. Are you under a doctor's care? | | | | |
| If yes, Dr. Name & Address | | | | |
| 15. Have you been hospitalized recently? | | | | |
| When & Where? | | | | |
| Why? | | | | |
| 16. Do you have a history of VD or any sexually transmitted diseases? | | | | |
| 17. Are you allergic to any medication or food? (List any/all) | | | | |
| 18. Have you fainted recently or had a recent head injury? | | | | |
| 19. Do you have a history of: | | | | |
| Heart Disease? | | | | |
| TB? | | | | |
| Hepatitis? | | | | |
| Diabetes? | | | | |
| 20. Do you wear glasses or contact lenses? | X | | | glasses |
| If yes, are they on/with you now? | X | | | |
| 21. Are you currently experiencing any of the following: shortness of breath; | | X | | |
| chronic cough; | | | | |
| production of sputum; | | | | |
| blood in sputum; | | | | |
| night sweats; | | | | |
| chest pain; | | | | |
| weight loss; | | | | |
| loss of appetite; | | | | |
| If a 'yes' was answered to 3 or more in this question, medical staff must be notified ASAP. | | | | |
| 22. Do you have a painful dental condition? | | | | |
| 23. If female, are you pregnant? | | | | |
| 24. If female, are you on birth control pills? | | | | |
| 25. Do you have any physical handicaps? | | | | |
| 26. Are you HIV positive? | | | | |
| 26. Do you have any other medical problems we should know about? | X | | | asthma |
| 27. Do you have any medical/dental insurance? | | O | | |

ARS completing medical questionnaire: _____ Initials _____   Unit # _____

Inmate signature _____

Supervisor Comments (optional) _____

Supervisor Signature _____

Page 2 of 2

DISTRIBUTION:        Original to Inmate File        Copy to Medical Staff



KENOSHA COUNTY SHERIFF'S DEPARTMENT
PRETRIAL FACILITY

MEDICAL/MENTAL SCREENING
VISUAL OBSERVATION REPORT
*To be completed by C/O at Intake*

Name Mentek, James

D.O.B. _____ 5-65 Sex M/K Race W

Inmate ID Number: 7644B-33

Correctional Officer ID # 1338

Observations

Physical condition at intake:

| QUESTION: | YES | NO | COMMENTS: |
|---|---|---|---|
| 1. Does the inmate have obvious pain, bleeding or other symptoms suggesting need for emergency services? | | X | |
| 2. Are there visible signs of injury or illness requiring immediate treatment or care? | X | | Cut to forehead |
| 3. Does the inmate appear to be under the influence of intoxicants, or exhibit signs? | | X | |
| 4. Does the inmate appear to be under the influence of barbiturates, heroin, or other drugs, or exhibit signs? | | | |
| 5. Is there any jaundice? (yellowing of skin or eyes) | | | |
| 6. Is inmate carrying any medications? If so, what is it? | | | |
| 7. Taken to hospital prior to intake? If so, describe treatment, medications, etc. | | | |
| 8. Does behavior suggest need for immediate psychiatric treatment? Psychological referral comments: | | | |

*Answering YES to 3 or more questions, numbers 2 thru 24, requires a supervisor be notified.*

| BEHAVIORAL OBSERVATIONS: | YES | NO | COMMENTS: |
|---|---|---|---|
| 1. Understands questions? | X | | |
| 2. Assaultive/violent behavior? | | X | |
| 3. Angry or hostile behavior? | X | | |
| 4. Loud/obnoxious behavior? | X | | |
| 5. Uncooperative? | X | | |
| 6. Unusual suspiciousness? | | X | |
| 7. Self-inflicted injury scars on wrists, legs and/or neck? | | | |
| 8. Bizarre behavior? | | | |
| 9. Seeing visions? | | | |
| 10. Hearing voices? | | | |
| 11. Anxious or afraid? | | | |
| 12. Depressed? | | X | |

FAST ID RESULTS: No Match

meyer, John   EX 4C

| CON'T. BEHAVIORAL OBSERVATIONS: | Y E S | N O | COMMENTS: |
|---|---|---|---|
| 13. Walks w/stagger? | | | |
| 14. Needle marks? | | | |
| 15. Talks w/slur? | | | |
| 16. Odor of Intoxicants? | | | |
| 17. Eyes red or bloodshot? | | | |
| 18. Lifeless reaction? | | | |
| 19. Incoherent/withdrawn? | | | |
| 20. Blank Stare? | | | |
| 21. Passive or non-talkative? | | | |
| 22. Confused? | | | |
| 23. Timid/Shy? | | | |
| 24. Unusually embarrassed? | | | |
| 25. For safety reasons, is there any other area that we have not addressed that would cause you to be concerned about your health or personal safety? | | | |

Additional Comments:

Supervisor's Comments (optional):

Supervisor's Signature

DISTRIBUTION:          Original to Inmate File          Copy to Medical Staff

G:SHCATA\FORMS\JAIL\medicvisobserv.doc     10/31/C3     TO BE COPIED ON PINK     Page 2 of 2

EX 48

# KENOSHA COUNTY INMATE ISOLATION RECORD

**INMATES NAME / ID:** MENTEK, JAMES 7644B-034          **DATE:** 12/26/2005 3:51 PM
**TYPE OF ISOLATION:** ☒ **ADMINISTRATIVE**    ☐ **MEDICAL**    **VOLUNTARY**

**ADMINISTRATIVE COMMENTS:**
Based on inmate Mentek's bizarre behavior he is placed on administrative confinement staturs.

**Inmate Statement:**
Inmate Mentek stated he is Jesus Christ.

INMATE'S FILE

This inmate's confinement will continue and we will monitor their behavior closely. Their placement is pursuant to WI Administrative Code Section 350.12. The inmate's status will be reviewed every seven days for the first 60 days and every 30 days thereafter.          **REEVALUATION DATE:** 01/02/06

**MEDICAL RECOMMENDATIONS:**
Dr. Caldwell documented that inmate Mentek is manic, delusional, and not willing to consume his medications. Inmate to remain isolated from general population for the safety of staff, the inmate, and the safe, secure, and tranquil operation of the PTF.

**RECOMMENDING HSU:** HSU          **MEDICAL EXPIRATION DATE:**

**SUPERVISORY COMMENTS:**
Inmate Mentek's confinement will be reviewed on a regulat basis.

Inmate's confinement was reviewed on:

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

_Cpl Reed 1427_
**SUPERVISOR SIGNATURE**
Original to inmate file          Copies to: ☐ZONE  ☐INMATE  ☐ADMINISTRATION  ☐MEDICAL  ☐CORPORALS

EX 4E



# COUNTY OF KENOSHA  DISTRICT ATTORNEY

**Robert D. Zapf**
District Attorney

**Sandra J. Bertelle**
Victim Witness Coordinator

**Rebecca Matoska-Mentink**
Office Manager

912 - 56th Street, Molinaro Building
Kenosha, Wisconsin 53140
(262) 653-2400
Fax (262) 653-2783 - 2nd Floor
Fax (262) 653-2411 - 3rd Floor

Assistant D.A.
Kelly A. Birschbach
Tracey L. Braun
Richard A. Cole
Rosamaria I. Delgado
Mark P. Dooley
Angelina Gabriele
Richard A. Ginkowski
Michael D. Graveley
Mary M. Hart
Robin Pederson
Erica M. Reinke
Jason A. Rossell
Shelly J. Rusch

February 23, 2006

James Mentek
Kenosha County Jail
1000 55th Street, Kenosha WI 53140

## RE:  STATE OF WISCONSIN V. JAMES A. MENTEK JR.
File No: 2005CM002787

Dear Mr Mentek:

I have had the opportunity to view the sword, or icon to use your term, that is in evidence. The towel allegedly used to cover it as well. You are correct that the sides or blade had not been sharpened and the point was rough. I also have reviewed the CCAP record and it is true that you are only facing CCW as a repeater and one count of bail jumping as a repeater. I am inclined to make an offer including 2005CM001089 and 2005CM002787.

In 2005CM001089 I would require you to plead either guilty or no contest to Issuing a worthless check. In 2005CM002787 I would require you to plead either guilty or no contest to an amended charge of disorderly conduct as a repeater. I would offer you two alternatives.

1. Plead as I offer, and I will argue the facts and circumstances, but not make a specific sentencing recommendation.
2. Plead as I offer, except I will strike the repeater allegation on the disorderly conduct. I will recommend probation on the DC and the IOWC, consecutive to any sentence after your revocation in 2004CF1063, primarily to obtain restitution for the worthless check.

For your information there was a recording device being used when you and I had our last discussions, while you were in custody. I have a copy of the recording and can provide you an opportunity to listen to it should you care to. It is only viewed by me as a record of our settlement discussions. Should we have any additional discussions, I will also have either a separate witness, a recording device or both. As you are representing yourself I am under additional obligations to make sure the process works fairly.

Sincerely,

Richard A. Cole
Assistant District Attorney
State Bar No. 1044677

②

## KENOSHA COUNTY SHERIFF'S DEPARTMENT
### PRETRIAL FACILITY
### MEDICAL/MENTAL SCREENING
### MEDICAL QUESTIONAIRE
*To be completed by ARS upon Booking*

Name **Mentek, James** D.O.B. ~~~~~ 65 Sex M Race W Weight **164**

ID # **76443-33** Date Form Completed **12-10-05** Time **844** Cell **J-5A**

*DID ARRESTING OFFICER COMPLETE **OFFICER OBSERVATION SUMMARY** ON THIS*
*INMATE?*  √ *YES* _____*NO If no, CONTACT SUPERVISION IMMEDIATELY.*

*MEDICAL SCREENING: You are requested to supply the following medical information about yourself to assist this department and medical personnel from the Kenosha County Sheriff's Department Detentions Division in providing necessary care and treatment. Your refusal or untruthful answers to these medical questions may delay delivery of proper treatment.*

| SOCIAL STRESS/SUICIDE RISK QUESTIONNAIRE (If "YES" is answered 3 or more times in questions 1 thru 10, OR if "YES" is answered to questions 6, 7, or 8, a supervisor must be notified. | YES | NO | REF | COMMENTS: |
|---|---|---|---|---|
| 1. (Observation) Are this inmate's charges shocking in nature? | | | | |
| 2. Have you experienced any of the following: | | | | |
| Job Loss? | | Ø | | |
| Arrest of a loved one? | | | | |
| Death of a loved one? | | | | |
| Marital separation? | | | | |
| Divorce? | | | | |
| Loss of business? | | | | |
| Major financial loss? | | | | |
| Other major problems? | | | | |
| 3. Do you hold a position of authority or respect within your community? | X | | | States he is god |
| 4. Do you have any home or family problems that we should know about? (If yes, describe) | | X | | |
| 5. Have you ever been in a mental institution or had psychiatric care? (If yes, describe) | X | | | St Lukes last year |
| 6. *Have you ever attempted or contemplated suicide?* | X | | | attempted 1987 in KCJ |
| *If yes, when?* | | | | |
| *Where?* | | | | |
| 7. *Are you contemplating suicide now?* | | X | | |
| 8. *(Observation) Does the inmate's behavior suggest a risk of suicide?* | | | | ? |
| 9. Do you use drugs or alcohol on a regular basis? If yes, type? Time last used? | | X | | |
| 10. Are you currently seeing a mental health worker/case manager/social worker/ psychologist/counselor/psychiatrist? If yes, who? | | X | | |

Page 1 of 2

EK 5B

| CON'T. MEDICAL QUESTIONS | Y E S | N O | R E F | COMMENTS: |
|---|---|---|---|---|
| 11. Do you have a sore throat, fever, or other infection that may spread throughout the jail? | ✓ | | | states throat is sore |
| 12. Are you on a special diet prescribed by a doctor? If so, what is it? | | ✓ | | |
| 13. Are you presently taking any medication? | | ✓ | | |
| If so, what is it? | | | | |
| Pharmacy used? | | | | |
| 14. Are you under a doctor's care? | | ✓ | | |
| If yes, Dr. Name & Address | | | | |
| 15. Have you been hospitalized recently? | | ✓ | | |
| When & Where? | | | | |
| Why? | | | | |
| 16. Do you have a history of VD or any sexually transmitted diseases? | | ✓ | | |
| 17. Are you allergic to any medication or food? (List any/all) | | ✓ | | |
| 18. Have you fainted recently or had a recent head injury? | ✓ | | | head injury |
| 19. Do you have a history of: | | ✓ | | |
| Heart Disease? | | ✓ | | |
| TB? | | | | |
| Hepatitis? | | | | |
| Diabetes? | | | | |
| 20. Do you wear glasses or contact lenses? | ✓ | | | glasses |
| If yes, are they on/with you now? | | | | |
| 21. Are you currently experiencing any of the following: shortness of breath; | | ✓ | | |
| chronic cough; | | | | |
| production of sputum; | | | | |
| blood in sputum; | | | | |
| night sweats; | | | | |
| chest pain; | | | | |
| weight loss; | | | | |
| loss of appetite; | | | | |
| If a 'yes' was answered to 3 or more in this question, medical staff must be notified ASAP. | | | | |
| 22. Do you have a painful dental condition? | | ✓ | | |
| 23. If female, are you pregnant? | | | | |
| 24. If female, are you on birth control pills? | | ✓ | | |
| 25. Do you have any physical handicaps? | | ✓ | | |
| 26. Are you HIV positive? | | ✓ | | |
| 26. Do you have any other medical problems we should know about? | | ✓ | | |
| 27. Do you have any medical/dental insurance? | | ✓ | | |

ARS completing medical questionnaire: _____ Initials _____ Unit # _____

Inmate signature _____

Supervisor Comments (optional) _____

Supervisor Signature _____                                    Page 2 of 2

DISTRIBUTION:    Original to Inmate File                    Copy to Medical Staff

①

## KENOSHA COUNTY SHERIFF'S DEPARTMENT
### PRETRIAL FACILITY
#### MEDICAL/MENTAL SCREENING
#### VISUAL OBSERVATION REPORT
*To be completed by C.O at Intake*

Name **Mentek, James A**    D.O.B ▓▓▓ - 65 Sex M · Race W

Inmate ID Number: **7644 B-3 2**    Correctional Officer ID # **1256**

Observations

Physical condition at intake:

| QUESTION: | YES | NO | COMMENTS: |
|---|---|---|---|
| 1. Does the inmate have obvious pain, bleeding or other symptoms suggesting need for emergency services? | | X | |
| 2. Are there visible signs of injury or illness requiring immediate treatment or care? | | X | |
| 3. Does the inmate appear to be under the influence of intoxicants, or exhibit signs? | X | | |
| 4. Does the inmate appear to be under the influence of barbiturates, heroin, or other drugs, or exhibit signs? | X | | |
| 5. Is there any jaundice? (yellowing of skin or eyes) | | X | |
| 6. Is inmate carrying any medications? If so, what is it? | | X | |
| 7. Taken to hospital prior to intake? If so, describe treatment, medications, etc. | | X | |
| 8. Does behavior suggest need for immediate psychiatric treatment? Psychological referral comments: | X | | acting strange |

*Answering YES to 3 or more questions, numbers 2 thru 24, requires a supervisor be notified.*

| BEHAVIORAL OBSERVATIONS: | YES | NO | COMMENTS: |
|---|---|---|---|
| 1. Understands questions? | X | | |
| 2. Assaultive/violent behavior? | | X | |
| 3. Angry or hostile behavior? | X | | |
| 4. Loud/obnoxious behavior? | | X | |
| 5. Uncooperative? | X | | |
| 6. Unusual suspiciousness? | X | | |
| 7. Self-inflicted injury scars on wrists, legs and/or neck? | | X | |
| 8. Bizarre behavior? | X | | |
| 9. Seeing visions? | | X | |
| 10. Hearing voices? | X | | |
| 11. Anxious or afraid? | | X | |
| 12. Depressed? | | X | |

FAST ID RESULTS:

EX 5D

| CON'T. BEHAVIORAL OBSERVATIONS: | Y E S | N O | COMMENTS: |
|---|---|---|---|
| 13.  Walks w/stagger? | | X | |
| 14.  Needle marks? | | | |
| 15.  Talks w/slur? | | | |
| 16.  Odor of Intoxicants? | | | |
| 17.  Eyes red or bloodshot? | | | |
| 18.  Lifeless reaction? | | X | |
| 19.  Incoherent/withdrawn? | | | |
| 20.  Blank Stare? | | | |
| 21.  Passive or non-talkative? | | | |
| 22.  Confused? | X | | |
| 23.  Timid/Shy? | | X | |
| 24.  Unusually embarrassed? | | X | |
| 25.  For safety reasons, is there any other area that we have not addressed that would cause you to be concerned about your health or personal safety? | | | |

Additional Comments:

_____

_____

_____

Supervisor's Comments (optional):

_____

_____

Supervisor's Signature

DISTRIBUTION:          Original to Inmate File          Copy to Medical Staff

G:\SHCATA\FORMS\JAIL\medicvisobserv.doc     10/31/03     *TO BE COPIED ON PINK*     Page 2 of 2

EX 5E

# KENOSHA COUNTY JAIL
## ZONE ONE PROTECTIVE HOLDING REPORT

Inmate Name: _Men tck, James_                              I.D. # _____

Date of Violation: _12·2·05_                               Time: _2340_

(Check all those that apply)
Supervisors Notified at: _2340_

**Booking Process Completed?**    Yes ☐ No ☒    Drug Use Suspected? Yes ☒ No☐

**Intoxication Suspected?**    Yes ☒ No ☐    Booking Notified?   Yes ☒ No☐

**Uncooperative?** ☒    **Combative?** ☐    **Non Violent?** ☐    **Suicidal?** ☐

**Difficulty or Inability to Following Instructions:** ☐

**INMATE FILE**

**Restraints Required:** ☐    **Restraint Chair Used:** ☐

**Refused to Obey Orders:** Yes ☐    No ☒

Narrative: _MR. James Mentck was brought to the jail by the KSD at Apprcct 2340 hrs on 12-2-05_

_Mr. Mentck was swearing at Arresting officer._

_Can be booked when he decides to co-operate & calm down._

**Injuries to Inmate:** Prior to Incarceration: ☐    During Incarceration: ☐    None: ☒

Narrative: _____

_____

_____

**Additional Supplemental Report Form Attached:**    Yes ☐    No ☐

**Arresting Agency:**    KSD: ☒    KPD: ☐    WSP: ☐    PPPD:☐
                        TLPD: ☐    SLPD: ☐    UWP: ☐    DNR: ☐    Other:_____

(Circle One)

Cell Location: PH-1, PH-2, X-block cell # _____, O-block cell # _____, Other: _MH-A_

Reporting C/O: _BC#12·3_    Additional C/O's Assisting: _#XP7, 12·97, 12·54_

C/O Signature: _____    Supervisor: _____ _1262_
Distribution: (Original): Inmate File    (Copies): Zone: ☐ Administration: ☐ Nurse: ☐

f:\casb sh:ib\lata\ZoneOneBlkRp:.doc

②

KENOSHA COUNTY SHERIFF'S DEPARTMENT
PRETRIAL FACILITY

MEDICAL/MENTAL SCREENING
**MEDICAL QUESTIONAIRE**
*To be completed by ARS upon Booking*

Name Mentek, James ^A  D.O.B.____ /65 Sex M Race W Weight 173

ID # 7644B -030  Date Form Completed 9/28/05  Time 2035 Cell GO4A

*DID ARRESTING OFFICER COMPLETE **OFFICER OBSERVATION SUMMARY** ON THIS*
*INMATE?    ✓ YES ____NO If no, CONTACT SUPERVISION IMMEDIATELY.*

*MEDICAL SCREENING: You are requested to supply the following medical information about yourself to assist this department and medical personnel from the Kenosha County Sheriff's Department Detentions Division in providing necessary care and treatment. Your refusal or untruthful answers to these medical questions may delay delivery of proper treatment.*

| SOCIAL STRESS/SUICIDE RISK QUESTIONNAIRE (If "YES" is answered 3 or more times in questions 1 thru 10, OR if "YES" is answered to questions 6, 7, or 8, a supervisor must be notified. | Y E S | N O | R E F | COMMENTS: |
|---|---|---|---|---|
| 1. (Observation) Are this inmate's charges shocking in nature? | | | | |
| 2. Have you experienced any of the following: | | | | |
|     Job Loss? | | | | |
|     Arrest of a loved one? | | | | |
|     Death of a loved one? | | | | |
|     Marital separation? | | | | |
|     Divorce? | | | | |
|     Loss of business? | | | | |
|     Major financial loss? | | | | |
|     Other major problems? | | ✓ | | |
| 3. Do you hold a position of authority or respect within your community? | | ✓ | | |
| 4. Do you have any home or family problems that we should know about? (If yes, describe) | | ✓ | | |
| 5. Have you ever been in a mental institution or had psychiatric care? (If yes, describe) | ✓ | | | november 2004 Chaptered St. Lukes - mental observation |
| 6. *Have you ever attempted or contemplated suicide?* | | | | |
|     *If yes, when?* | ✓ | | | 1986 |
|     *Where?* | | | | in our jail - with a razor |
| 7. *Are you contemplating suicide now?* | | ✓ | | |
| 8. *(Observation) Does the inmate's behavior suggest a risk of suicide?* | | ✓ | | |
| 9. Do you use drugs or alcohol on a regular basis? If yes, type? Time last used? | | ✓ | | |
| 10. Are you currently seeing a mental health worker/case manager/social worker/ psychologist/counselor/psychiatrist? If yes, who? | ✓ | | | Dr. Klabn |

Page 1 of 2

| CON'T. MEDICAL QUESTIONS | YES | NO | REF | COMMENTS: |
|---|---|---|---|---|
| 11. Do you have a sore throat, fever, or other infection that may spread throughout the jail? | | ✓ | | |
| 12. Are you on a special diet prescribed by a doctor? If so, what is it? | | ✓ | | |
| 13. Are you presently taking any medication? | | | | |
| If so, what is it? | ✓ | | | lamictal + geodon |
| Pharmacy used? | | | | albuteral inhalers |
| 14. Are you under a doctor's care? | | | | nexaim - not here |
| If yes, Dr. Name & Address | | | | |
| 15. Have you been hospitalized recently? | | | | |
| When & Where? | | | | |
| Why? | | ✓ | | |
| 16. Do you have a history of VD or any sexually transmitted diseases? | | ✓ | | |
| 17. Are you allergic to any medication or food? (List any/all) | | ✓ | | |
| 18. Have you fainted recently or had a recent head injury? | | ✓ | | |
| 19. Do you have a history of: | | | | |
| Heart Disease? | | | | |
| TB? | | | | |
| Hepatitis? | | ✓ | | |
| Diabetes? | | ✓ | | |
| 20. Do you wear glasses or contact lenses? | ✓ | | | |
| If yes, are they on/with you now? | ✓ | | | |
| 21. Are you currently experiencing any of the following:    shortness of breath; | | ✓ | | |
| chronic cough; | | | | |
| production of sputum; | | | | |
| blood in sputum; | | ✓ | | |
| night sweats; | | | | |
| chest pain; | | | | |
| weight loss; | | | | |
| loss of appetite; | | ✓ | | |
| If a 'yes' was answered to 3 or more in this question, medical staff must be notified ASAP. | | | | |
| 22. Do you have a painful dental condition? | | | | |
| 23. If female, are you pregnant? | | | | |
| 24. If female, are you on birth control pills? | | | | |
| 25. Do you have any physical handicaps? | | ✓ | | |
| 26. Are you HIV positive? | | | | |
| 26. Do you have any other medical problems we should know about? | ✓ | | | hernea in stomach |
| 27. Do you have any medical/dental insurance? | ✓ | | | |

ARS completing medical questionnaire: _JoJoO_

_Initials_          _Unit #_

Inmate signature _____

Supervisor Comments (optional) _____

Supervisor Signature _____    1427

Page 2 of 2

Run: 25-DEC-2005 17:01    KENOSHA SHERIFF DEPT        By: PDS366    PAGE:   2
JBS06                                    * * * * *


### KENOSHA COUNTY SHERIFF'S DEPARTMENT

I have received a copy of the Inmate rules, regulations and information packet.
I know that it is my responsibility to read and abide by the rules and
regulations set forth in this handbook. Upon my release from this facility, I
will turn this handbook over to staff.


            Inmate's name:   MENTEK,JAMES ALLEN JR

                OCA#:   000000200511881

        Inmate's ID#:   07644B-034

        Inmate's Sig: _____

    Correctional Officer: _____


            **Place this copy in inmate's file**


EX 6A

## INMATE REQUESTS
### (VII)

Two forms are available for you to request, authorize or communicate information to staff members: All requests submitted must include your I.D. number.

1. **Request for Medical Attention Form** - Medical staff are available 24 hours per day with on-site Doctor's care available once per week. Inmates seeking medical attention must submit a request on the proper form prior to 10:00 PM the night before, unless emergency circumstances exist. You should clearly write the problem, your name, your housing location, the date and time. The completed form is to be turned over to a Correctional Officer. The applicable staff member will forward the request to the medical staff. A nominal fee will be deducted from your commissary account for medication. Jail inmates will be assessed the following charges for health care services:

   |   |   |
   |---|---|
   | a. On Site Medical Services: | $5.00 |
   | b. Off Site Medical Services: | 10.00 |
   | c. Lab Work: | 5.00 |
   | d. Prescriptions: | 3.00 |

2. **Inmate Request/Grievance Form** - The Inmate Request/Grievance Form is a general-purpose document used to request a variety of services and programs. The form can be used to submit a complaint, concern, or convey information to a staff member. The request/grievance must be legible, on the proper form, signed, dated, and submitted without profanity.

**Financial Accounts:** All inmates' money will be deposited into their commissary account. Any person may deposit cash into an inmate's account. Personal checks will not be accepted. Cashier checks and money orders are allowed. Inmates may not transfer money to another inmate's account. Huber inmates may only put money on their own account. Funds in your commissary account can be transferred to an outside person (3rd party - family or friend). Funds will be released in the form of a check.

- Requests for money to a 3rd party must be submitted on a Property Release form by Tuesday night lockdown / lights out for processing the same week.
- The request should include the full name of the person the funds are to be released to, the amount, the reason for the transaction, and your name and date.
- All checks must be picked up from the Jail Accountant on the first floor of the Pre-Trial Facility between **1:00PM and 3:00PM on Thursday only**. If the check is not picked up, it will be voided and the money returned to the inmate's commissary account.
- The person accepting the funds must provide picture identification and sign an acceptance receipt.
- If the inmate would like the check mailed, he/she must include a stamped, addressed envelope with the request.

$\angle X \ 6B$

(I)

In accordance with Wisconsin State Statute, The Department of Corrections Administrative Code, and standards promulgated by the American Medical Association, the mission of the Kenosha County Sheriff's Department Detentions Division is to safely and securely confine individuals in the least restrictive environment consistent with behavior, adjustment, special needs, and severity of charges.

While in custody you will be expected to be aware of and to follow the rules. Rules have been adopted for the purpose of maintaining proper custody control, and to ensure the safety of the inmate population.

The purpose of this booklet is to make you aware of the rules of the facility, as well as the type of behavior which will be required of you while you are in custody. Your housing location and participation in inmate programs is determined by your adherence to facility rules, adjustment to incarceration and your classification.

This booklet is also an informational resource outlining inmate privileges, services, court process, and legal representation.

If you have any questions or do not understand the information provided, ask a staff member for clarification.

## CLASSIFICATION
(II)

Objective classification is a process whereas a determination will be made regarding your housing assignment. The process follows a 7-day cycle. During your initial 7 days of confinement the classification unit will gather information about your criminal and incarceration history. Documentation regarding your disciplinary track record and adjustment history will also be gathered and utilized in determining your correct classification. Normally a determination regarding your long term housing assignment will be made within 7 days.

The classification unit can extend the classification process up to 21 days. After the 21st day of confinement, a final determination regarding your housing assignment will be made.

Your classification determination is not appealable. However, you may request, in writing, a classification reassessment. All requests will be reviewed by the Classification Committee. The committee will determine the legitimacy of requests for reclassification and any actions to be taken regarding the request.

There are a number of factors used to determine your long term housing assignment. No one factor is more important than the other. However, your ability and willingness to follow all facility rules and staff instruction will receive a high degree of consideration.

1

$\in$X 6C